ADOLPH KING *vs.* THE CONNECTICUT COMPANY.

Third Judicial District, Bridgeport, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued October 22d, 1929—decided March 3d, 1930.

*William J. Larkin,* for the appellant (defendant).

*Clayton L. Klein* and *Joseph E. Talbot,* for the appellee (plaintiff).

WHEELER, C. J. The plaintiff seeks to recover damages for personal injuries suffered by him in consequence of a trolley car of defendant colliding with him while he was upon a public highway. Among the errors assigned in defendant's appeal are the court's failure to charge upon the last-clear-chance, or supervening negligence, doctrine in accordance with its requests four, five and six, stating the grounds which indicated that this doctrine did not apply. Instead, the court charged that it did apply. If the facts in evidence did not require a charge upon this subject, the defendant would have been justified in pressing, not only its claim that the doctrine was not applicable, but also the trial

court's error in charging upon it. The decision of this point depends upon the conclusion to be drawn from the facts found. Since the same question arises on the appeal from the denial of the motion to set aside the verdict, we will reserve further discussion of it until we take up that ground of appeal.

Defendant's fourth request to charge on the last-clear-chance doctrine limited the zone of danger to the trolley track without taking into account the space outside the track from which the plaintiff, lying down, could extend his feet so as to place them on the track, that alone would furnish ample support, without further consideration, for the court's failure to incorporate this request in its instructions. The first part of the fifth request upon the care required to be exercised by the plaintiff, the court fully and correctly presented to the jury. After giving the ordinary rule of duty as to the care the plaintiff was required to exercise, the court continued: "And of course, if he [the plaintiff] was seized, as has been testified, while so walking, with a sort of shock or thrombosis, which caused him to fall and make it impossible for him to get away, of course he would not be to blame for that. Now, ordinarily, if a man lay down with his legs across the trolley rail and stayed there, he would be guilty of contributory negligence. But if he fell there, when properly there and using ordinary care, as a result of a seizure which came upon him without his fault, he would not be guilty of such negligence." This charge covered the situation, upon the facts claimed by the plaintiff to have been proved, with sufficient accuracy and in terms easily within the comprehension of the jury. If the plaintiff, while in a position safe from danger from the car, in consequence of an attack of cerebral thrombosis, became incapable of exercising reasonable care and, by extending his feet so as to put them on the track, fell

into a position of danger from the car, this could not be attributed to his contributory negligence, for nature, not his will, placed him there. So, if an insane man became incapable of exercising reasonable care, or a child of so tender years as to be incapable, in the eye of the law, of contributory negligence, came into the path of the trolley car, neither of these persons would be guilty of contributory negligence in being in such place of danger, and if the car struck him his conduct would not be in law the proximate cause, that is the substantial factor, in causing his injuries. *Mahoney* v. *Beatman*, 110 Conn. 184, 195, 147 Atl. 762; Bohlen, Studies in the Law of Torts, p. 568.

The fifth request, in its second part, that as matter of law this doctrine did not apply, we shall take up at a later point and shall show that the facts in evidence required the court to present this doctrine to the jury in accordance with our law and leave to them its application as one of fact. The sixth of defendant's requests, which contained the elements of this doctrine and the proof required to support it which defendant claimed made this doctrine inapplicable, so far as it coincided with our law, was presented to the jury in unexceptionable instructions: That the last-clear-chance doctrine "requires the presence of four conditions—first, that the injured party had already come into a position of peril; . . . Second, that the injuring party then or thereafter becomes or, in the exercise of ordinary prudence, ought to have become aware, not only of that fact but also that the party in peril either reasonably could not escape from it, or apparently will not avail himself of opportunities open to him to do so. . . . Third, that the injuring party subsequently has the opportunity, by the exercise of reasonable care, to save the other from harm. Fourth, that he fails to exercise such care." This statement literally corresponds with

the rule found in *Fine* v. *Connecticut Co.,* 92 Conn.
626, 103 Atl. 921, and was supplemented by comments
which helped to make these four conditions—so plainly
stated by this court—better understood by the jury.
These were followed by this instruction: "Now, the
question for you to determine is whether the motor-
man knew or should have known, if he had kept a
proper lookout, that the plaintiff was in a position of
danger from which he could not or would not extricate
himself; that after he knew or should have known that,
there was still opportunity, in the exercise of due care,
to stop the car, and that he failed to so stop it. All
these things must be proved by the plaintiff by a fair
preponderance of the evidence." After a correct ex-
position of the meaning of preponderance of the evi-
dence, the court concluded its charge upon this sub-
ject in these words: "Now, after you have passed
upon all these questions which it is necessary for the
plaintiff to prove, if you find that he has failed to prove
any of them by a fair preponderance of evidence, then
your verdict must be for the defendant and you need
go no further. On the other hand, if you find that
the plaintiff has proved his contentions by a fair pre-
ponderance of the evidence, you come to the question
of damages."

The court thus specifically directed the attention of
the jury to the factors which they must consider in
passing upon the third of these conditions and this
was the real question in the case. And then the court
finally instructed the jury that if they found the plain-
tiff had failed to prove any of these conditions by the
required proof their verdict must be for the defendant.
The jury must have understood that it was necessary
for them to find the facts underlying this third con-
dition, otherwise the verdict must be for the defendant.
Taking the charge as a whole, the jury could not have

misunderstood the requirement of any of these conditions.

The other assignments of error—four, five and eight —manifestly do not conform to our rules. General assignments of error, such as these, are wasted legal effort.

The defendant rests its appeal from the denial of its motion to set aside the verdict upon its claim that, upon the evidence, the doctrine of the last-clear-chance is not applicable. It urges as matter of law, in its fifth request, that "after the plaintiff's danger was or should have been apparent to the motorman," he "had no opportunity by the exercise of reasonable care to save him from harm, and therefore the doctrine . . . is not applicable." The solution of the problem involves the ascertainment of the distance the trolley car was from the plaintiff when he should have been observable to the motorman and the location the plaintiff was in at that time. The plaintiff himself did not testify to any of the occurrences at the time of the accident, due, as he claims, to an attack of cerebral thrombosis just preceding the accident. He relies in his proof largely upon the testimony of four of defendant's employees— motorman Lyon, upon a car stopping at the place of the accident about an hour before the accident; Hawkins, a conductor upon a car stopping a half hour before, and Titel the motorman and McWeeney the conductor of the car which struck the plaintiff at about four-thirteen o'clock in the afternoon of September 19th, 1926. Lyon testified he saw a man resembling the plaintiff sitting on the side of the track near a pole and so near the track that, thinking he was in danger, he stopped his car, ordered the man to get out of the way or he would get hurt, and the man pulled his feet up and said "Go ahead." Hawkins said the motorman of his car stopped his car because he saw a

man sitting leaning against a pole near the track and that he told him it was a dangerous spot to be sitting in, but the man said nothing in reply and his car continued on.

The car which collided with plaintiff was going west from New Britain toward Meriden. When it came to a point from one hundred to three hundred feet from Dickerman's corner, as the witnesses variously estimated, the motorman saw a foot on the track about thirty-five feet ahead of the car. He was traveling about fifteen miles an hour. He could, by the exercise of reasonable care, have stopped the car within forty-two feet from the point he first saw the plaintiff. He used thereafter every effort to stop the car before it collided with the plaintiff, and dragged him about ten feet when the car came to a stop about forty-five feet from the point at which he first saw the plaintiff. The motorman testified he was keeping a good lookout and could not see the plaintiff. An explanation by him of his failure to see the plaintiff sooner was that he was lying in grass from one to two feet deep. There was evidence which the jury might reasonably have credited that the grass in no place near this point was at its maximum over four or five inches high and that there was practically no grass within a foot or two of the track. They might, too, have taken into consideration the fact that two other motormen had been able to see the plaintiff in time to stop their cars, although admittedly the grass was higher further from the track than near it. It was broad daylight and the day was clear. The motorman had a straightaway view for a number of hundred of feet. The trolley rails were elevated several inches above the roadway and the front vestibule of the car was about two feet above the rails. Under these circumstances the jury might reasonably have inferred that the reason the motorman

did not see the plaintiff sooner was because he was not keeping a reasonable lookout.

The jury might also have fairly drawn an unfavorable inference as to the trustworthiness of these employees, if they found that each of them testified as to the depth of the grass for the purpose of providing an excuse for the failure of this motorman to have seen the plaintiff in time to have stopped his car before running into him. There can be no doubt upon the evidence that the jury were justified in finding that this collision was due in part at least to the failure of the motorman to have operated his car with reasonable care. Assuming, the defendant's counsel argues, that the plaintiff could have been seen as the car proceeded along the straightaway, nevertheless, the evidence discloses that he was not in the zone of danger until he pushed his foot out on to the trolley track and thereafter the motorman had no opportunity by the exercise of reasonable care to have saved him from harm and therefore this doctrine has no application to this case.

The jury may reasonably have found the plaintiff was lying in this place of danger because of an attack of cerebral thrombosis, which is stagnant circulation in a certain area of the brain causing dizziness and amnesia or loss of memory, that he had fallen down in consequence of this attack and was unable to help himself or to be responsible for his conduct. If the jury found that, while in this condition and lying just outside the point of collision with the car, the plaintiff pushed his foot out upon the track—as the motorman testified—too late to give him the opportunity to stop the car before it collided with the plaintiff, this would not present a situation which would enable the defendant to invoke the rule in *Nehring* v. *Connecticut Co.*, 86 Conn. 109, 84 Atl. 301, upon which it seeks to rely—

that where the plaintiff's own negligence continues as an active agency in producing the resulting injury down to the time of its occurrence, or until it is too late for the defendant, in the exercise of reasonable care, to save him, his conduct must be regarded as a concurring proximate cause of the injury. That rule is predicated upon what is called in the *Nehring* case "active negligence," meaning by this, as we explained in *Dickerson* v. *Connecticut Co.*, 98 Conn. 87, 91, 118 Atl. 518, a positive act of negligence, or a failure to fulfil a duty which is the equivalent of a positive act; this plaintiff, the jury might fairly have found, was incapable of any negligence as he lay there, the victim of this attack. He was no more capable of a negligent act, as we have said, than an insane man or a child of tender years, incapable of exercising reasonable care. The doctrine the defendant would invoke would have no application if the jury found in accordance with these circumstances. Moreover, as we have pointed out, the court instructed the jury correctly and sufficiently upon the four conditions upon which we hold this doctrine rests; if the jury followed these instructions they must have found, as their verdict indicates, that this motorman did have the opportunity, in the exercise of reasonable care, to save the plaintiff from harm.

This conclusion, upon the facts to which we have referred, would bring this case so close to the line that we could not hold that the verdict should be set aside even if we were of the opinion that the plaintiff's limb was a few inches or a foot or two outside the reach of the car when his foot was placed upon the rail. The jury were not obliged to accept this motorman's version with literalness. They had the right to exercise their judgment under their oaths, weighing his evidence in the light of their having found, if they did so find, his statement concerning the height of the grass

to have been made for the purpose of covering his own negligence in failing to see the plaintiff in time to have avoided the accident.

There is another fact in evidence which might have satisfied the jury that this plaintiff had been close to the track and in danger of being struck by the car for a sufficient time to have given the motorman the opportunity in the exercise of reasonable care to have stopped his car before it ran into him. In the report made by him to his company in the fulfillment of his duty we find these questions and answers: "Was injured person at fault? Yes. Why? Sleeping aside of the track." If the jury found the plaintiff was sleeping "aside the track," having suffered from this attack, they might well have found that at that time he was in danger of the car striking him and that, if sleeping, he had been in this condition and place for a period of time long enough to have given a motorman observant of his duty time to have avoided this accident. They might, too, have somewhat discredited the motorman's statement that the plaintiff while suffering from this attack and asleep pushed out his foot so that it came upon the rail coincidently with the motorman's seeing for the first time any part of the body of this sleeping man. A more protracted discussion of this question of fact cannot make clearer the true situation. The evidence discloses a plain case for the application of the doctrine of the last-clear-chance. That application was peculiarly a jury decision, for it comprised the weighing of testimony, the searching of motives, the finding of facts, the drawing of inferences and conclusions from the facts so found in the scales of their common sense and impartial judgment. The instruction of the court that this doctrine was applicable, taken in connection with the rest of the charge, must have been understood by the jury to mean that this doctrine was one for

their consideration upon the facts but that before they could find in favor of the plaintiff they must find that he had proven each of the four essential conditions of the doctrine by a fair preponderance of the evidence. The defendant has no just cause of complaint with this or any portion of the charge.

There is no error.

In this opinion the other judges concurred.