In re Guardianship of Meyer: German Mutual Fire Insurance Society of Liberty, Respondent, vs. Meyer, by guardian, Appellant.

*April 29—June 4, 1935.*

For the appellant there were briefs by *George F. Frantz* of Fennimore and *Kopp & Brunckhorst* of Platteville, and oral argument by *Mr. Arthur W. Kopp* and *Mr. Frantz*.

For the respondent there was a brief by *Carthew & Meyer* of Lancaster, and oral argument by *Harry E. Carthew*.

MARTIN, J.   The appellant, hereinafter called defendant, while employed as a farm hand on the farm of one Louisa P. Napp in the town of Fennimore, Grant county, being operated by her son Clyde E. Napp, on September 29, 1932, caused the destruction by fire of a barn and contents located on said farm, resulting in a loss to said Louisa P. Napp in the sum of $2,550 and to the said Clyde E. Napp in the sum of $1,100.   Defendant was charged with the crime of arson, in which proceedings he was examined as to his sanity and found to be insane, and thereupon was committed to the Central State Hospital for the Criminal Insane at Waupun, and the trial of said defendant for the crime of arson was postponed indefinitely under the provisions of sec. 357.13, Stats.

On December 12, 1932, the respondent, German Mutual Fire Insurance Society, settled and adjusted the fire loss sustained by the said Louisa P. Napp for the sum of $2,500 and settled the fire loss sustained by Clyde E. Napp for the sum of $935, whereupon said Louisa P. Napp and Clyde E. Napp by instruments in writing sold, assigned, and transferred to said German Mutual Fire Insurance Society their respective claims, demands, rights, or causes of action which they had against the defendant Gustav Meyer. Thereafter on December 29, 1932, in proceedings had in the county court of Grant county, Pauline Meyer was by said court appointed general guardian of the said Gustav Meyer, insane; that an order was entered by the court fixing and limiting the time within which claims might be filed against the estate of said defendant. The respondent filed its claim in said guardianship proceedings, to which objections were filed by Pauline Meyer as such general guardian; whereupon pleadings were made and filed in the county court, and defendant gave notice of his demand for a jury trial under sec. 324.17, Stats. Thereupon the county court entered an order transferring the matter to the circuit court for Grant county as provided for by said sec. 324.17. The two cases, the one involving the claim of Louisa P. Napp and the one involving the claim of Clyde E. Napp, were consolidated and tried together.

The trial court submitted the following special verdict, to which the jury made answers as indicated:

"1. Did the defendant, Gustav Meyer, intentionally set the fire which destroyed the Napp property on the 29th of September, 1932? Answer: *No.*

"2. At the time the fire occurred on September 29, 1932, was the defendant, Gustav Meyer, insane? Answer: *Yes.*

"3. What was the fair value of the Napp barn just prior to its destruction on September 29, 1932? Answer: *$2,100.00.*

"4. What was the fair value of the machine shed just prior to its destruction by fire on September 29, 1932? Answer: *$350.00.*

"5. What sum of money would be required to repair the damage to the silo on said farm as a result of the fire? Answer: *$100.00*.

"6. What was the fair value:

"(a) of the hay and straw destroyed by said fire: Answer: *$350.00*.

"(b) of the grain destroyed by said fire? Answer: *$400.00*.

"(c) of the farm machinery destroyed by said fire? Answer: *$250.00*.

"(d) of the mule destroyed by said fire? Answer: *$100.00*."

Defendant moved for judgment upon the special verdict and the files and proceedings had. The respondent filed alternative motions, among others, for judgment upon the pleadings and undisputed evidence; for judgment upon the special verdict; for judgment notwithstanding the special verdict; and if the foregoing motions be denied, for an order changing the answer to the first question from "No" to "Yes," and for judgment upon the special verdict when so amended and upon the uncontradicted evidence; and, finally, if all foregoing motions be denied, to set aside the verdict and for a new trial because of alleged errors in the admission and rejection of evidence; because of error in the form of the first question of the special verdict and in submitting the first question to the jury; because there is no evidence to sustain the finding of the jury to the first question, and that the answer is perverse and contrary to the overwhelming weight of the evidence; and because justice has not been done.

The trial court denied all motions except the respondent's motion for a new trial. As to that, the order provides:

"It is further ordered, on motion of the plaintiff, and in the exercise of the court's discretion, that the special verdict herein is hereby set aside and a new trial ordered because the court is satisfied justice has not been done, for the reason that the issue as to whether the defendant set the fire was not properly submitted to the jury."

From this order defendant appealed. Plaintiff made no motion for a directed verdict at the conclusion of the evidence, and made no motion for review after defendant took his appeal to this court. Had plaintiff moved for a directed verdict in the court below on the undisputed evidence in the record, judgment should have been directed in favor of the plaintiff and against the defendant for the sum it paid in settlement of the fire losses. That defendant set the fire was proven beyond question of doubt. The only defense made was that on and prior to September 29, 1932, and at all times since said date, said defendant was insane, and as will be observed by the authorities hereinafter referred to, insanity was no defense.

In 14 R. C. L. p. 596, § 51, the rule is stated thus:

"It is the well settled rule that a person *non compos mentis* is liable in damages to one injured by reason of a tort committed by him unless evil intent or express malice constitutes an essential element in the plaintiff's recovery. This rule is usually considered to be based on the principle that where a loss must be borne by one of two innocent persons, it shall be borne by him who occasioned it, and it has also been held that public policy requires the enforcement of the liability in order that those interested in the estate of the insane person, as relatives or otherwise, may be under inducement to restrain him and that tort-feasors may not simulate or pretend insanity to defend their wrongful acts causing damage to others. . . ."

The question of the civil liability of an insane person for his torts has seldom been presented to this court for its consideration. In *Huchting v. Engel*, 17 Wis. 237, which was an action involving the civil liability of an infant, in an action for compensatory damages for a trespass, we find the following quotation in the opinion by Chief Justice DIXON, at page 238:

" 'Where the minor has committed a tort with force, he is liable at any age; for in case of civil injuries with force, the

intention is not regarded; *for in such case a lunatic is as liable to compensate in damages as a man in his right mind.'*"

In *Karow v. Continental Ins. Co.* 57 Wis. 56, 15 N. W. 27, which was an action on an insurance policy by the heirs of their father, who had set fire to his homestead and then either killed himself or allowed himself to perish in the flames, the issue of the father's insanity was involved. The court said, at page 60:

"The learned counsel contends that, while an insane person cannot be guilty of a crime, nor liable for a tort wherein the *intent* is a necessary ingredient, yet that a lunatic has always been held liable for other torts resulting in damage. In support of this, counsel cites several cases, and argues from them that if a lunatic burns the buildings of A, he is liable to A for the amount of the actual damages sustained; and that, since this is so, it must follow that a lunatic cannot burn his own buildings upon which he has previously obtained an insurance, and then turn around and recover of the insurer the damages he has sustained by reason of his own act.

"The argument is plausible, and deserves very careful consideration, especially in the absence of any direct authority upon the question involved. In order to appreciate its force, it may be well to consider the precise ground upon which such liability is predicated. *Krom v. Schoonmaker,* 3 Barb. 650, was an action for false imprisonment on void process issued by the defendant when a lunatic, and Judge HARRIS stated the rule thus: 'He [a lunatic] is not a free agent, capable of intelligent, voluntary action, and therefore is incapable of a guilty intent, which is the very essence of crime; but a civil action, to recover damages for *an injury, may be maintained against him, because the intent with which the act is done is not material.* . . . Ordinarily, in an action for a personal injury, the amount of damages is, at least to a considerable extent, governed by the motive which influenced the party in committing the act. . . . But in respect to the lunatic, *as he has properly no will,* it follows that the only proper measure of damages in an action against him for a

wrong, is the mere compensation of the party injured,' " and at page 64, the court said:

"But while the negligent burning by the assured of his own property does not relieve the company from liability, yet the negligent burning of another person's property would subject him to damages on the ground of negligence. So, while the burning of his own property by an assured under no restraint of duty and incapable of care, and without any intent or design, does not relieve the company from liability, yet the same act of burning another's property might subject such person to damages therefor, not on the ground of negligence, as that word is usually understood, but, in the language of Chief Justice GIBSON, *supra* [*Beals v. See,* 10 Pa. St. 56, 61], 'on the principle that where a loss must be borne by one of two *innocent* persons, it should be borne by him who occasioned it.' "

In *Williams v. Hays,* 143 N. Y. 442, 38 N. E. 449, 450, discussing the question of civil liability of an insane person, the court said, at page 446:

"The general rule is that an insane person is just as responsible for his torts as a sane person, and the rule applies to all torts, except perhaps those in which malice and, therefore, intention, actual or imputed, is a necessary ingredient, like libel, slander and malicious prosecution. In all other torts intention is not an ingredient, and the actor is responsible, although he acted with a good and even laudable purpose, without any malice. The law looks to the person damaged by another and seeks to make him whole, without reference to the purpose or the condition, mental or physical, of the person causing the damage. The liability of a lunatic for his torts, in the opinions of judges, has been placed upon several grounds. The rule has been invoked that where one of two innocent persons must bear a loss, he must bear it whose act caused it. . . . The lunatic must bear the loss occasioned by his torts, as he bears his other misfortunes, and the burden of such loss may not be put upon others."

In *Cross v. Kent,* 32 Md. 581, an action of trespass against defendant for setting fire to and burning plaintiff's barn,

proof was offered on the part of the defendant that at the time of the trespass, he was, and for many years before and from his infancy had been, an idiot and insane person. Upon the issues joined, the court found the defendant did commit the wrong complained of and gave judgment in favor of the plaintiff. At the trial the defendant contended that the idiocy of the defendant, if found by the court, is a bar to the action; that such idiocy or insanity is evidence in mitigation of damages; and that if the court found the burning was the result of accident and not the intentional or deliberate act of the defendant, such accidental burning, if not a bar to the action, is, nevertheless, a mitigation of the damages claimed by the plaintiff. The court said, at page 583:

"The distinction between the liability of a lunatic or insane person in civil actions for torts committed by him, and in criminal prosecutions, is well defined, and it has always been held, and upon sound reason, that though not punishable criminally, he is liable to a civil action for any tort he may commit."

In *Brown, Adm'r, v. Howe,* 9 Gray (Mass.), 84, an insane person carelessly set fire to the dwelling house of his guardian, and while it was held that the guardian could not be allowed the amount of his damages above the amount received from the insurance in his probate account, it was held that his only course was to sue the administrator of the lunatic who had died, in a court of law, and have a judgment fixing his damages and collect it from the assets, if the estate was solvent; if not, to share with the other creditors.

In *McIntyre, Adm'r, v. Sholty, Adm'r,* 121 Ill. 660, 13 N. E. 239, 2 Am. St. Rep. 140, an action for damages for the killing of plaintiff's intestate by a lunatic, the court said:

"There is, to be sure, an appearance of hardship in compelling one to respond for that which he is unable to avoid for want of the control of reason. But the question of liability in these cases is one of public policy. If an insane person

is not held liable for his torts, those interested in his estate, as relatives or otherwise, might not have a sufficient motive to so take care of him as to deprive him of opportunities for inflicting injuries upon others. There is more injustice in denying to the injured party the recovery of damages for the wrong suffered by him, than there is in calling upon the relatives or friends of the lunatic to pay the expense of his confinement, if he has an estate ample enough for that purpose. The liability of lunatics for their torts tends to secure a more efficient custody and guardianship of their persons."

In *Seals v. Snow,* 123 Kan. 88, 254 Pac. 348, 51 A. L. R. 829, in an action brought by plaintiff against defendant for the shooting and killing of her husband, the jury returned a verdict in favor of the plaintiff. With the verdict were special findings among which was one that Snow was insane when he shot plaintiff's husband. Notwithstanding, plaintiff was given judgment on the verdict, which was affirmed on appeal. The court said:

"It is conceded that the great weight of authority is that an insane person is civilly liable for his torts. This liability has been based on a number of grounds, one that where one of two innocent persons must suffer a loss, it should be borne by the one who occasioned it. Another, that public policy requires the enforcement of such liability in order that relatives of the insane person shall be led to restrain him and that tort-feasors shall not simulate or pretend insanity to defend their wrongful acts causing damage to others, and that if he was not liable there would be no redress for injuries, and we might have the anomaly of an insane person having abundant wealth depriving another of his rights without compensation. . . . 'Therefore, the law, in giving redress, has in view the case of the party injured, and the extent of his injury, and makes what he suffers the measure of compensation. . . .' " See Annotation, "Liability of Insane Person for Tort," 51 A. L. R. 833.

The defendant's civil liability having been clearly established on the trial, respondent being entitled to judgment notwithstanding the verdict, we deem it our duty under

sec. 251.09, Stats., to reverse the order granting a new trial herein, with directions to enter judgment in favor of the plaintiff against the defendant in the sum of $3,435, with interest from the date of the verdict with costs.

*By the Court.*—Order granting new trial reversed, with directions for judgment in favor of plaintiff and against defendant in the sum of $3,435, with interest from date of verdict, with costs.