Sheri GOULD, Scott Gould, and St. Croix County,
Plaintiffs-Respondents,†

v.

AMERICAN FAMILY MUTUAL INSURANCE CO., Defendant-
Appellant.

Court of Appeals

*No. 94–0074. Submitted on briefs September 7,
1994.—Decided September 27, 1994.*

(Also reported in 523 N.W.2d 295.)

†Petition to review granted.

For the defendant-appellant the cause was submitted on the briefs of *Nancy J. Sixel* and *Charles E. Brady* of *Tinglum, Sixel & Brady* of River Falls.

For the plaintiffs-respondents the cause was submitted on the briefs of *Michael J. Neitzke* and *Don Paul Novitzke* of *Novitzke & Gust* of Amery.

For the Coalition of Wisconsin Aging Groups amicus curiae briefs were submitted by *Betsy J. Abramson* of *the Elder Law Center* of Madison.

For the Board on Aging and Long Term Care an amicus curiae brief was submitted by *William P. Donaldson* of Madison.

For the American Association of Retired Persons an amicus curiae brief was submitted by *Jeffrey Spitzer-Resnick* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   American Family Mutual Insurance Co. brings this interlocutory appeal from a judgment predicated on the negligence of Roland Monicken, an elderly resident of the St. Croix Health Center who is afflicted with Alzheimer's disease. American Family contends that Monicken was afflicted with dementia, presumably as a result of his Alzheimer's disease, and that he was therefore incapable of controlling his conduct. American Family claims that because Monicken's mental condition rendered him incapable of controlling his conduct, he cannot be held liable in negligence for the injuries his conduct caused to Sheri Gould. Because we conclude that a person may not be held civilly liable where a mental condition deprives that person of the ability to control his or her conduct, we reverse the judgment and remand for further determinations consistent with this opinion.

In the early months of 1987, Roland Monicken began to display bizarre and irrational behavior. As a result of this behavior, Monicken's family took him to

several doctors and Monicken was diagnosed with Alzheimer's disease. Monicken's mental condition continued to deteriorate, and eventually his family was forced to admit him to the St. Croix Health Center's dementia ward. Upon being admitted to the center, Monicken was diagnosed with primary degenerative dementia and Alzheimer's disease. Monicken's records also indicated that he had continual delusions and that he was restless, wandering and sometimes violent.

Sheri Gould is a registered nurse and acts as the head nurse of the center's dementia ward. On the day of her injury, Gould discovered Monicken in the room of another patient. Because Monicken was not welcome in the other patient's room, Gould requested that he return to his own room. In an effort to redirect him to his room, Gould touched Monicken at the elbow. Monicken then pushed or struck Gould causing her to sustain personal injuries.[1]

Gould subsequently brought an action for personal injury damages against Monicken, his wife and son and his insurer.[2] Monicken and his insurer filed a motion for summary judgment arguing that Monicken's mental condition precluded him from being negligent. The motion was supported by the affidavit of a psychiatrist which stated that Monicken was unable to appreciate or control his behavior and that he had no advanced warning that he might engage in violent behavior. The motion for summary judgment was denied and the matter tried before a jury.

---

[1] Gould has no recollection of being pushed or struck by Monicken. However, because Monicken does not dispute that he did, in fact, push or strike Gould, we need not address this issue.

[2] Gould subsequently dismissed her suit against Monicken, his wife and his son, leaving American Family Insurance as the sole defendant.

After the trial, Monicken requested the court to submit a special verdict to the jury that would allow it to determine whether Monicken was capable of negligence. The trial court, however, refused the proposed special verdict and submitted a verdict that asked whether Monicken was negligent and whether his negligence was the cause of Gould's injuries. The court also instructed the jury that in determining negligence, it must disregard Monicken's mental illness in accordance with WIS J I—CIVIL 1021. The jury returned a verdict finding Monicken causally negligent, and American Family appeals.

██

The dispositive issue on this appeal is whether an individual may be held civilly liable for the personal injuries he or she causes to another where a mental condition deprived the individual of the ability to control his or her conduct. This issue presents a question of whether Monicken owed a legal duty to Gould. *See Breunig v. American Family Ins. Co.*, 45 Wis. 2d 536, 541, 173 N.W.2d 619, 623 (1970); *Burch v. American Family Mut. Ins. Co.*, 171 Wis. 2d 607, 613, 492 N.W.2d 338, 341 (Ct. App. 1992). Whether a legal duty exists and the scope of that duty are questions of law that we review without deference to the trial court. *Matter of McCoy*, 142 Wis. 2d 750, 754, 419 N.W.2d 301, 304 (Ct. App. 1987).

American Family contends that the trial court erred by failing to amend WIS J I—CIVIL 1021 to allow the jury to determine whether Monicken's mental condition made him incapable of negligence. WIS J I—CIVIL 1021 states: "It is the law that a person who is mentally ill is held to the same standard of care as one who has normal mentality, and in your determination of the question of negligence, you will give no consideration to

the defendant's mental condition." The trial court concluded that WIS J I—CIVIL 1021 was an accurate reflection of the current state of Wisconsin law and therefore refused to amend the instruction.

There is little question that the law of Wisconsin at one time provided that "insanity" did not affect a person's liability in tort. This rule was first articulated in *In re Meyer's Guardianship*, 218 Wis. 381, 385, 261 N.W. 211, 213 (1935). There, the plaintiffs brought suit against a legally insane defendant for money damages after the defendant damaged their barn. The defendant argued that he could not be held civilly liable for the damage because he was insane at the time he destroyed the plaintiff's property. In concluding that the defendant's insanity did not preclude him from civil liability, the court stated: "It is the well settled rule that a person non compos mentis is liable in damages to one injured by reason of a tort committed by him unless evil intent or express malice constitutes an essential element in the plaintiff's recovery." *Id.*

The *Meyer* court articulated several policy reasons to support its conclusion that an individual's mental condition does not preclude him or her from negligence. First, the court noted that where one of two innocent persons must suffer a loss it should be borne by the person who occasioned it. Second, the court stated that such a rule encourages family or beneficiaries of the insane person's estate to restrain and control that person so as to minimize the danger of his causing injury to others. Finally, the court expressed fear that a rule absolving the insane from tort liability might encourage false claims of insanity. *Id.*

*Meyer* remained the law in Wisconsin for the next thirty-five years. In 1970, however, the Wisconsin Supreme Court limited *Meyer*. In *Breunig*, the defen-

dant's insurer argued that the defendant could not be held civilly liable for damages she caused in an auto accident because she was suffering from a mental delusion at the time of the collision. *Id.* at 540, 173 N.W.2d at 623. In responding to this contention, the court noted:

> The question of liability in every case [in which insanity is proffered as a defense] must depend upon the kind and nature of the insanity. The effect of the mental illness . . . or disorder must be such as to affect the person's ability to understand and appreciate the duty [to use ordinary care] which rests upon him . . . or if the insanity does not affect such understanding and appreciation, it must affect his ability to control his [conduct] in an ordinarily prudent manner. And in addition, there must be an absence of notice or forewarning to the person that he may be suddenly subject to such a type of insanity or mental illness.

*Id.* at 541, 173 N.W.2d at 623. The court went on to hold that a sudden mental incapacity that is equivalent to a heart attack or an unanticipated epileptic seizure will not result in liability and will not be treated under the general rule of insanity. *Id.* at 544, 173 N.W. 2d at 624.

Gould contends that because *Breunig* is limited to sudden mental disabilities, it is inapposite to this case. Therefore, Gould argues that under *Meyer*, Monicken's mental condition was irrelevant to the question of whether he was negligent. We do not agree.

Although *Breunig* dealt with sudden mental disabilities, the supreme court announced that "it is unjust to hold a man responsible for his conduct which he is incapable of avoiding and which incapability was unknown to him prior to the accident." *Id.* at 543-44,

173 N.W.2d at 624. The court then went on to hold that "a sudden mental incapacity equivalent in its effect to such physical causes as a sudden heart attack, epileptic seizure, stroke or fainting" would not result in liability. *Id.* at 544, 173 N.W.2d at 624. Thus, the underlying premise of *Breunig* is that an individual should not be held liable in negligence where a mental disability prevents the individual from controlling his or her conduct. This premise is inconsistent with the rule enunciated in *Meyer*, and it contradicts the policy reasons underlying the *Meyer* decision. Furthermore, by analogizing mental disabilities with a sudden heart attack, epileptic seizure or stroke, the court insulated those unable to control their conduct from tort liability founded in negligence.[3] Therefore, *Breunig* compels our conclusion that an individual with a *permanent* mental disability that prevents that individual from controlling or appreciating his or her conduct cannot be liable in negligence.[4]

---

[3] Gould points out that *Breunig v. American Family Ins. Co.*, 45 Wis. 2d 536, 541, 173 N.W.2d 619, 623 (1970), states that an individual will only be precluded from civil liability if that individual had no forewarning that he or she was likely to suffer from the delusion. As the court noted in *Theisen v. Milwaukee Auto. Mut. Ins. Co.*, 18 Wis. 2d 91, 118 N.W.2d 140 (1962), an individual is required to be without forewarning of the sudden mental delusion because if the individual had such warnings and failed to heed the warnings, he or she would be negligent for continuing to act under these conditions. In this case, however, forewarning is not an issue because Monicken suffered from a permanent mental disability.

[4] Throughout the twentieth century, legal scholars have argued that an individual's mental condition should be taken into account in determining whether he or she was negligent. *See* David E. Seidelson, *Reasonable Expectations and Subjective Standards in Negligence Law: The Minor, the Mentally*

We specifically adopted and applied the premise of the *Breunig* decision in *Burch*. In *Burch*, the plaintiff brought suit against his insurance company after his child injured him. The child suffered from permanent mental disabilities that included mental retardation and autism. The trial court granted summary judgment to the insurance company on the basis that the child's mental incompetence precluded her from being negligent as a matter of law. We reversed the trial court's grant of summary judgment; however, we specifically noted that "if the jury believes the experts' testimony and infers that [the child's] mental retardation, cerebral palsy or autistic tendencies prevent her from appreciating her duty to refrain from certain acts, it would be reasonable for the jury to conclude that [the child] is not negligent." *Id.* at 615, 492 N.W.2d at 341.

■

The supreme court's decision in *Breunig*, taken in conjunction with our decision in *Burch*, demonstrates that an individual suffering from a permanent mental disability that prevents the individual from controlling or appreciating the consequences of his or her conduct is precluded from negligence. Therefore, we conclude that the trial court erred when it instructed the jury that it was required to disregard Monicken's mental condition in determining whether he was negligent.

*Impaired, and the Mentally Incompetent*, 50 GEO. WASH. L. REV. 17 (1981); William J. Curran, *Tort Liability of the Mentally Ill and Mentally Deficient*, 21 OHIO ST. L.J. 52 (1960); Robert M. Ague, *The Liability of Insane Persons in Tort Actions*, 60 DICK. L. REV. 211 (1956); W.G.H. Cook, *Mental Deficiency in Relation to Tort*, 21 COLUMBIA L. REV. 333 (1921); William B. Hornblower, *Insanity and the Law of Negligence*, 5 COLUMBIA L. REV. 278 (1905).

The issue of whether the defendant's mental condition precludes the defendant from controlling his or her conduct is an issue that must be determined by a properly instructed jury unless there is no disputed issue of material fact. *Id.* at 613-14, 492 N.W.2d at 341. When instructing the jury, the trial court has broad discretion. *Fischer v. Ganju*, 168 Wis. 2d 834, 849, 485 N.W.2d 10, 16 (1992). Where the trial court has given an erroneous instruction, reversal is not warranted unless the error was prejudicial. *Lutz v. Shelby Mut. Ins. Co.*, 70 Wis. 2d 743, 750-51, 235 N.W.2d 426, 431 (1975). An error is prejudicial if it is probable that the erroneous instruction misled the jury to a different conclusion than it would have come to absent the error. *McMahon v. Brown*, 125 Wis. 2d 351, 354, 371 N.W.2d 414, 416 (Ct. App. 1985).

In this case, the trial court erroneously instructed the jury that it must disregard Monicken's mental condition in determining whether he was negligent. This instruction was prejudicial to American Family because it misled the jury into believing that Monicken's mental condition was irrelevant to the issue of whether he was negligent. Therefore, because we conclude that it is probable that the jury would have come to a different conclusion had it been properly instructed, we reverse the judgment and verdict and remand for a determination of whether there is a disputed issue of material fact as to whether Monicken's mental condition prevented him from controlling or appreciating the consequences of his conduct.

*By the Court.*—Judgment reversed and cause remanded with directions.