Sheri GOULD, Scott Gould and St. Croix County, Plaintiffs-Respondents-Petitioners,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Appellant-Cross Petitioner.

Supreme Court

*No. 94–0074. Oral argument October 5, 1995.—Decided January 30, 1996.*

(Also reported in 543 N.W.2d 282.)

For the plaintiffs-respondents-petitioners there were briefs by *Michael J. Neitzke, Don Paul Novitzke* and *Novitzke, Gust & Sempf*, Amery and oral argument by *Michael J. Neitzke*.

For the defendant-appellant-cross petitioner there was a brief by *Nancy J. Sixel* and *Tinglum & Sixel, S.C.*, River Falls and oral argument by *Nancy J. Sixel*.

Amicus curiae brief was filed by *Betsy J. Abramson* and *William P. Donaldson,* Madison for the Elder Law Center of the Coalition of Wisconsin Aging Groups and the Board on Aging and Long Term Care of the State of Wisconsin.

ANN WALSH BRADLEY, J. Both the plaintiffs, Sheri and Scott Gould, and the defendant, American Family Mutual Insurance Company, seek review of a court of appeals' decision which reversed and remanded a judgment of the Circuit Court of St. Croix County, Eric J. Lundell, Judge. The judgment imposed liability against American Family for personal injuries caused by its insured, Roland Monicken, who was institutionalized suffering from Alzheimer's disease. The Goulds assert that the court of appeals erred by abandoning the objective reasonable person standard and adopting a subjective mental incapacity defense in negligence cases. American Family challenges the need for a remand.

While we affirm the court of appeals' reversal of the judgment, we do so on other grounds. We hold that an individual institutionalized, as here, with a mental disability, and who does not have the capacity to control or appreciate his or her conduct cannot be liable for injuries caused to caretakers who are employed for financial compensation. Because the Goulds, in essence, admit that it would be impossible to rebut the evidence of Monicken's incapacity, we reverse the part of the court of appeals' decision remanding the case to the trial court for a determination of Monicken's capacity.

Monicken was diagnosed with Alzheimer's disease after displaying bizarre and irrational behavior. As a

453

result of his deteriorating condition, his family was later forced to admit him to the St. Croix Health Care Center. Sheri Gould was the head nurse of the center's dementia unit and took care of him on several occasions.

Monicken's records from St. Croix indicate that he was often disoriented, resistant to care, and occasionally combative. When not physically restrained, he often went into other patients' rooms and sometimes resisted being removed by staff. On one such occasion, Gould attempted to redirect Monicken to his own room by touching him on the elbow. She sustained personal injuries when Monicken responded by knocking her to the floor.[1]

Gould and her husband brought suit against Monicken and his insurer, American Family. American Family admitted coverage and filed a motion for summary judgment, arguing that Monicken was incapable of negligence as a matter of law due to his lack of mental capacity. An affidavit of Monicken's treating psychiatrist filed in support of the motion stated that Monicken was unable to appreciate the consequences of his acts or to control his behavior. The trial court denied American Family's summary judgment motion and the liability portion of the bifurcated trial was tried to a jury.

After presenting its case, American Family proposed giving instructions and a special verdict that directed the jury to decide, as a threshold question of law, whether Monicken had the mental capacity to understand and appreciate the duty to act with reasonable care at the time of the incident based on his

---

[1] Gould has no recollection of exactly how she was injured. However, Monicken does not dispute that he either pushed or struck Gould.

Alzheimer's disease. The trial court denied this request. Pursuant to Wis JI—Civil 1021, the court instructed the jury to disregard any evidence related to Monicken's mental condition and to determine his negligence under the objective reasonable person standard.[2] The jury found Monicken totally negligent and a judgment of liability was entered against American Family.[3]

The court of appeals granted American Family's interlocutory appeal and reversed the judgment, holding that "a person may not be held civilly liable where a mental condition deprives that person of the ability to control his or her conduct." *Gould v. American Family Mut. Ins. Co.*, 187 Wis. 2d 671, 673, 523 N.W.2d 295 (Ct. App. 1994). The court remanded the case "for a determination of whether there is a disputed issue of material fact as to whether Monicken's mental condition prevented him from controlling or appreciating the consequences of his conduct." *Id.* at 680.

Both the Goulds and American Family petitioned this court for review. The Goulds argue that the court of appeals abandoned clear, long-standing precedent in determining that mental disability may constitute a defense to negligence. American Family agrees with the court of appeals' holding, but petitioned for cross

---

[2] The trial court instructed the jury in part as follows:

Evidence has been received and it appears without dispute that the defendant at the time of the incident was mentally and physically ill. It is the law that a person who is mentally and physically ill is held to the same standard of care as one who has normal physical and mental conditions, and in your determination of the question of negligence, you will give no consideration to the defendant's mental or physical condition.

*See* Wis JI—Civil 1021, "Negligence of Mentally Ill."

[3] The damages portion of the bifurcated trial has not been tried to date.

review to reverse the court's remand mandate. American Family asserts that a remand is unnecessary because Monicken's mental incapacity was virtually conceded at trial.

It is a widely accepted rule in most American jurisdictions that mentally disabled adults are held responsible for the torts they commit regardless of their capacity to comprehend their actions; they are held to an objective reasonable person standard. *See generally*, Restatement (Second) of Torts § 283B (1965); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 135 (1984). Legal scholars trace the origins of this rule to an English trespass case decided in 1616, at a time when strict liability controlled. *Id*. at 1072, citing *Weaver v. Ward*, 80 Eng. Rep. 284 (K.B. 1616).

When fault-based liability replaced strict liability, American courts in common law jurisdictions identified the matter as a question of public policy and maintained the rule imposing liability on the mentally disabled. Although early case law suggested that Wisconsin followed this trend,[4] this court specifically adopted the common law rule and the public policy

---

[4] For example, in *Huchting v. Engel*, 17 Wis. 237, 238 (1863), an action involving the civil liability of an infant, the court commented in dicta that "a lunatic is as liable to compensate in damages as a man in his right mind." In *Karow v. Continental Ins. Co.*, 57 Wis. 56, 64, 15 N.W. 27 (1883), the court held that an insurance company was not relieved from liability when its insured burned his own property in a state of insanity, but stated in dicta that "the same act of burning another's property might subject such person to damages . . . on the principle that where a loss must be borne by one of two *innocent* persons, it should be borne by him who occasioned it." (Emphasis in original; quoted source omitted.)

justifications behind it in *German Mut. Fire Ins. Soc'y v. Meyer*, 218 Wis. 381, 385, 261 N.W. 211 (1935).

In *Meyer*, the defendant was criminally charged with arson to a barn but was committed to a mental hospital after he was found to be insane. In the civil claim filed by the insurer who covered the loss, the defendant pled his insanity as a defense. *Meyer*, 218 Wis. at 382-85. The court primarily relied on cases from other jurisdictions to conclude that insanity was not a defense for tort liability. *Id.* at 385-90.

In doing so the court quoted with approval the following statement of the general rule and public policy rationale behind it:

> It is the well settled rule that a person *non compos mentis* is liable in damages to one injured by reason of a tort committed by him unless evil intent or express malice constitutes an essential element in the plaintiff's recovery. This rule is usually considered to be based on the principle that where a loss must be borne by one of two innocent persons, it shall be borne by him who occasioned it, and it has also been held that public policy requires the enforcement of the liability in order that those interested in the estate of the insane person, as relatives or otherwise, may be under inducement to restrain him and that tort-feasors may not simulate or pretend insanity to defend their wrongful acts causing damage to others . . . .

*Id.* at 385 (quoted source omitted). *Meyer* forms the basis of the present day jury instruction concerning the primary negligence of the mentally ill, Wis JI—Civil 1021.

This court did not have occasion to address the issue again until *Breunig v. American Family Ins. Co.*, 45 Wis. 2d 536, 173 N.W.2d 619 (1970). In *Breunig,*

Erma Veith was overcome with a mental delusion while driving and crossed the center line of a roadway, striking the plaintiff's vehicle. The plaintiff sued Veith's automobile liability insurer, and a jury returned a verdict finding her causally negligent on the theory that she had knowledge or forewarning of her mental delusions. *Id.* at 538.

On appeal, the insurer argued that Veith could not be negligent as a matter of law because she was unable to drive with a conscious mind based on the sudden mental delusion. This court created a limited exception to the common law rule, holding that insanity could be a defense in the rare case "where the [person] is suddenly overcome without forewarning by a mental disability or disorder which incapacitates him from conforming his conduct to the standards of a reasonable man under like circumstances." *Id.* at 543. However, because this court concluded that there was sufficient evidence for the jury to find that Veith had forewarning of the mental delusions, she was not entitled to use her condition as a defense. *Id.* at 545.

The court of appeals in the present case relied on expansive dicta in *Breunig* to hold that *Breunig* overruled *Meyer*.[5] It interpreted *Breunig* as a turning point in the law. *See Gould*, 187 Wis. 2d at 677-78. We disa-

---

[5] We note that prior to this case, the court of appeals also relied on *Breunig v. American Family Ins. Co.*, 45 Wis. 2d 536, 173 N.W.2d 619 (1970), to suggest that a mental disability could be a defense to negligence. *See Burch v. American Family Mut. Ins. Co.*, 171 Wis. 2d 607, 492 N.W.2d 338 (Ct. App. 1992). We reserve further discussion of the facts and circumstances of *Burch* for that opinion. *See Burch v. American Family Mut. Ins. Co.*, 198 Wis. 2d 465, 543 N.W.2d 277 (1996).

gree. In contrast to the broad dicta found in *Breunig*, the actual holding was very limited:

> All we hold is that a sudden mental incapacity equivalent in its effect to such physical causes as a sudden heart attack, epileptic seizure, stroke, or fainting should be treated alike and not under the general rule of insanity.

*Breunig*, 45 Wis. 2d at 544. *Breunig* was not a turning point in the development of the common law, but rather it was a limited exception to the *Meyer* rule based on sudden mental disability.

The court of appeals erroneously perceived the underlying premise of *Breunig* to be that a person should not be held negligent where a mental disability prevents that person from controlling his or her conduct. *Gould*, 187 Wis. 2d at 678. By limiting its holding to cases of sudden mental disability, the *Breunig* court chose not to adopt that broad premise. We also decline to do so.

We are concerned that the adoption of the premise, as set forth by the court of appeals, would entail serious administrative difficulties. Mental impairments and emotional disorders come in infinite types and degrees. As the American Law Institute recognized in its Restatement of Torts, a legitimate concern in formulating a test for mentally disabled persons in negligence cases is "[t]he difficulty of drawing any satisfactory line between mental deficiency and those variations of temperament, intellect and emotional balance which cannot, as a practical matter, be taken into account in imposing liability for damage done." Restatement (Second) of Torts, § 283B, cmt. b.1.

The difficulties encountered by the trier of fact in determining the existence, nature, degree, and effect of

a mental disability may introduce into the civil law some of the issues that currently exist in the insanity defense in criminal law. We are wary of establishing a defense to negligence based on indeterminate standards of mental disability given the complexities of the various mental illnesses and the increasing rate at which new illnesses are discovered to explain behavior. *See, e.g., State v. Morgan*, 195 Wis. 2d 388, 536 N.W.2d 425 (Ct. App. 1995) (discussing relevance of expert testimony regarding post-traumatic stress disorder based on defendant's "psycho-social" history).

Further, while the traditional public policy rationale relied on by this court in *Meyer* in support of the common law rule are subject to criticism,[6] we remain hesitant to abandon the long-standing rule in favor of a broad rule adopting the subjective standard for all mentally disabled persons. Generally, the public policy rationale, in varying degrees, remain legitimate concerns. Accordingly, we turn our discussion to how those rationale apply to the facts before us.

American Family does not dispute that Monicken committed an act that was a substantial factor in causing Gould's injury. Rather, it asserts that Monicken cannot be held liable for his alleged negligence as a matter of law based on his lack of mental capacity.

■ Even though the jury determined that Monicken was negligent and that his negligence was a cause of the plaintiff's injuries, liability does not necessarily follow. Public policy considerations may preclude liability. *Coffey v. Milwaukee*, 74 Wis. 2d 526, 540-41, 247 N.W.2d 132 (1976). *See also Morgan v. Penn-*

---

[6] *See* Stephanie I. Splane, *Tort Liability of the Mentally Ill in Negligence Actions*, 93 Yale L.J. 153, 158-60 & n.30 (1983) (citing law review commentaries criticizing the law).

*sylvania General Ins. Co.,* 87 Wis. 2d 723, 737, 275 N.W.2d 660 (1979). Whether public policy considerations should preclude liability in this instance is a question of law which we review *de novo. Rockweit v. Senecal,* 197 Wis. 2d 409, 425, 541 N.W.2d 742 (1995).

One recognized public policy reason for not imposing liability despite a finding of negligence is that allowance of recovery would place an unreasonable burden on the negligent tortfeasor. *Morgan,* 87 Wis. 2d at 737. As explained in detail below, this court concludes that the circumstances of this case totally negate the rationale behind the *Meyer* rule imposing liability on the mentally disabled, and therefore application of the rule would place an unreasonable burden on the institutionalized mentally disabled tortfeasor.

The first rationale set forth in *Meyer* is that "where a loss must be borne by one of two innocent persons, it shall be borne by him who occasioned it." *Meyer,* 218 Wis. at 385. The record reveals that Gould was not an innocent member of the public unable to anticipate or safeguard against the harm when encountered. Rather, she was employed as a caretaker specifically for dementia patients and knowingly encountered the dangers associated with such employment. It is undisputed that Gould, as head nurse of the dementia unit, knew Monicken was diagnosed with Alzheimer's disease and was aware of his disorientation and his potential for violent outbursts. Her own notes indicate that Monicken was angry and resisted being removed from another patient's room on the day of her injury.

By analogy, this court in *Hass v. Chicago & N.W. Ry.,* 48 Wis. 2d 321, 326-27, 179 N.W.2d 885 (1970), relied on public policy considerations to exonerate negligent fire-starters or homeowners from liability for

461

injuries suffered by the firefighters called to extinguish the fire. This court held that to make one who negligently starts a fire respond in damages to a firefighter who is injured placed too great a burden on the homeowner because the hazardous situation is the very reason the fireman's aid was enlisted. *Id.* at 324, 327.

Likewise, Gould, as the head nurse in the secured dementia unit and Monicken's caretaker, had express knowledge of the potential danger inherent in dealing with Alzheimer's patients in general and Monicken in particular. Holding Monicken negligent under these circumstances places too great a burden on him because his disorientation and potential for violence is the very reason he was institutionalized and needed the aid of employed caretakers. Accordingly, we conclude that the first *Meyer* rationale does not apply in this case.

The second rationale used to justify the rule is that "those interested in the estate of the insane person, as relatives or otherwise, may be under inducement to restrain him . . . ." *Meyer*, 218 Wis. at 385. This rationale also has little application to the present case. Monicken's relatives did everything they could to restrain him when they placed him in a secured dementia unit of a restricted health care center. When a mentally disabled person is placed in a nursing home, long-term care facility, health care center, or similar restrictive institution for the mentally disabled, those "interested in the estate" of that person are not likely in need of such further inducement.

The third reason for the common law rule set forth in *Meyer* is to prevent tortfeasors from "simulat[ing] or pretend[ing] insanity to defend their wrongful acts . . . ." *Id.* This rationale is likewise inapplicable under the facts of this case. To suggest that Mr. Monicken would

"simulate or pretend" the symptoms of Alzheimer's disease over a period of years in order to avoid a future tort liability is incredible. It is likewise difficult to imagine circumstances under which persons would feign the symptoms of a mental disability and subject themselves to commitment in an institution in order to avoid some future civil liability.

■

In sum, we agree with the Goulds that ordinarily a mentally disabled person is responsible for his or her torts. However, we conclude that this rule does not apply in this case because the circumstances totally negate the rationale behind the rule and would place an unreasonable burden on the negligent institutionalized mentally disabled. When a mentally disabled person injures an employed caretaker, the injured party can reasonably foresee the danger and is not "innocent" of the risk involved. By placing a mentally disabled person in an institution or similar restrictive setting, "those interested in the estate" of that person are not likely to be in need of an inducement for greater restraint. It is incredible to assert that a tortfeasor would "simulate or pretend insanity" over a prolonged period of time and even be institutionalized in order to avoid being held liable for damages for some future civil act. Therefore, we hold that a person institutionalized, as here, with a mental disability, and who does not have the capacity to control or appreciate his or her conduct cannot be liable for injuries caused to caretakers who are employed for financial compensation.[7]

---

[7] We note that other courts have rejected the common law rule within the limited context of severely mentally disabled persons confined in institutions based on similar public policy considerations. *Mujica v. Turner*, 582 So. 2d 24, 25 (Fla. Dist.

We next address American Family's challenge to the need for a remand. The court of appeals here remanded the case to the trial court to determine whether there is a disputed issue of fact regarding whether Monicken's mental capacity prevented him from controlling or appreciating the consequences of his conduct. *Gould*, 187 Wis. 2d at 680. American Family alleges that Monicken's total incapacity was virtually conceded at trial and therefore a remand is not necessary. Although the Goulds request a remand, in their brief they admit, in essence, that upon remand it would be impossible to rebut the evidence of Monicken's incapacity. Based on our review of the record, we reach a similar conclusion.

■

Accordingly, we reverse that part of the decision of the court of appeals remanding the case to the trial court for a determination on the issue of Monicken's mental capacity. We remand to the trial court with directions to enter judgment for American Family in accordance with this decision.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part; the cause is remanded to the circuit court with directions to enter judgment in accordance with this decision.

Ct. App. 1991); *Anicet v. Gant*, 580 So. 2d 273 (Fla. Dist. Ct. App. 1991).