**Corrine COLMAN, Plaintiff,**

v.

**NOTRE DAME CONVALESCENT HOME, INC. and Gail Kemp, Conservator of the Person of mary Denittis and Mary Denittis, Individually, Defendants.**

**Civil Action No. 3:96 CV 0486(GLG).**

United States District Court,
D. Connecticut.

July 7, 1997.

---

L. Douglas Shrader, R. Kelley Franco, Shrader & Knapp, Westport, CT, for Corrine Colman.

Carolyn Roberts Linsey, Owens, Schine, Nicola & Donahue, Trumbull, CT, for Notre Dame Convalescent Home, Inc.

Richard H. Raphael, Westport, CT, for Gail Kemp, Mary Denittis, I.

## MEMORANDUM DECISION

GOETTEL, District Judge.

This a motion for summary judgment by defendants Gail Kemp, Conservator of the Person of Mary Denittis., and Mary Denittis, individually (collectively "Denittis"). Denittis moves for summary judgment on counts two (negligence) and three (battery) of plaintiff Corrine Colman's ("Colman") complaint. We have supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367(a), as plaintiff's first count brought against defendant Notre Dame Convalescent Home, Inc. arises under the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* For the following reasons, defendant's motion (document # 47) is GRANTED in part and DENIED in part.

## FACTS

The material facts related to this motion are not in dispute. Plaintiff is a recreational therapist employed by defendant Notre Dame Convalescent Home. Plaintiff is completely blind.

Defendant Denittis suffers from senile dementia and has been a resident of the convalescent home since November, 1994. She was admitted sometime after being declared an incompetent person in a probate proceeding in the New Canaan Probate Court on August 11, 1993.[1] It is undisputed that, as a result of her condition, defendant suffers from severe memory deficit and confusion.

On May 17, 1995, while plaintiff vas entertaining residents of the convalescent home by playing her guitar, Denittis wrestled the guitar away from plaintiff and used it to beat her on the head. As a result of the attack, plaintiff suffered injuries and was unable to

---

1. Defendant Gail Kemp was appointed as conservator of Mary Denittis by the Probate Court for the District of New Canaan.

work for three weeks. Plaintiff returned to work in June, 1995. Approximately two months later, on August 30, 1995, Denittis again attacked plaintiff, causing her to lose her balance and fall. As result of this incident, plaintiff injured her cervical and lumbar spines. Plaintiff claims that, as a result of these *suffers* from depression, post-traumatic stress disorder, and panic disorders. She has not yet returned to work at the convalescent home.

### DISCUSSION

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether or not the record presents genuine issue for review, the court must resolve all factual disputes in favor of the non-moving party. *See Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). "If, as to any issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Gummo v. Village of Depew, N.Y.,* 75 F.3d 98, 107 (2d Cir.) *cert. denied,* —— U.S. ——, 116 S.Ct. 1678, 134 L.Ed.2d 780 (1996). The party seeking summary judgment bears the burden of demonstrating the absence of any genuine factual dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)

*Count Three: Battery*

■ Denittis argues that she is entitled to summary judgment on plaintiff's third count, which alleges battery, on the grounds that she "is unable to comprehend her actions and act as a reasonable person [and] she is unable to form the intent necessary to commit an intentional tort." Defendant's Memorandum of Law, p. 8.

■ However, the Connecticut Supreme Court has held otherwise. In *Polmatier v. Russ,* 206 Conn. 229, 537 A.2d 468 (1988), the Court adopted the rule followed by the majority of jurisdictions to have considered the issue that insane persons may be held liable

for their intentional torts. *Id.* at 234, 537 A.2d 468. In so doing, the Court. reasoned that such liability was consistent with "the common law principle that where one of two innocent persons must suffer loss from an act done, it is just that it should fall on the one who caused the loss rather than upon the other who had no agency in producing it and could not by any means have avoided it." *Id.* at 236, 537 A.2d 468 (internal quotations omitted). Accordingly, defendant's motion for summary judgment on court three is denied.

*Count Two: Negligence*

■ Denittis also argues that she is entitled to summary judgment on plaintiff's second count which alleges negligence. Her principle argument is that, as an individual suffering from senile dementia, she is incapable of acting reasonably, and therefore her behavior should not be evaluated against that of the "reasonably prudent person", as is required by Connecticut law.

While there are no Connecticut Supreme Court cases on that point, courts of other jurisdictions which have considered the issue unanimously have adopted the common law rule that an insane or mentally disordered person is civilly liable for injuries resulting from her negligence. *See Bashi v. Wodarz,* 45 Cal.App.4th 1314, 53 Cal.Rptr.2d 635, 641 (1996); *Delahanty v. Hinckley,* 799 F.Supp. 184, 187 (D.D.C.1992); *C.T.W. v. B.C.G.,* 809 S.W.2d 788, 793 (Tex.Ct.App.1991); *Mujica v. Turner,* 582 So.2d 24, 25 (Fla.Dist.Ct.App. 1991) (recognizing majority rule, but applying exception); *Goff v. Taylor,* 708 S.W.2d 113, 115 (Ky.Ct.App.1986); *Schumann v. Crofoot,* 43 Or.App. 53, 602 P.2d 298, 301 (1979) (affirming trial court's instruction that defendant's mental state was not a defense to negligence); *Banks v. Dawkins,* 339 So.2d 566, 568 (Miss.1976); *Kuhn v. Zabotsky,* 9 Ohio St.2d 129, 224 N.E.2d 137, 141 (1967); *Johnson v. Lambotte,* 147 Colo. 203, 363 P.2d 165, 166 (1961) (adopting general rule stated in 44 C.J.S. Insane Persons § 122, p. 281 that "an insane person may be liable for his torts the same as a sane person").

The reasoning behind those decisions is one of public policy. Such a rule avoids

"[t]he difficulty of drawing any satisfactory line between mental deficiency and those variations of temperament, intellect, and emotional balance which cannot, as a practical matter be taken into account in imposing liability for damage done." This rule also avoids "the difficulties which the triers of fact must encounter in determining [the] existence, nature, degree, and effect [of mental illness]." Comments to Restatement (Second) of Torts § 283B. The rule further expresses the belief that "if mental defectives are to live in the world they should pay for the damage they do ... [and] that their liability will mean that those who have charge of them or their estates will be stimulated to look after them, keep them in order, and see that they do not do harm." *Id.*[2]

■ We conclude, therefore, that the inability to act rationally is not, *per se,* a bar to liability for negligence. However, in a recent Connecticut Supreme Court case, *Jawarski v. Kiernan,* 241 Conn. 399, (Sup.Ct.1997) (holding that adult participants on opposing sports teams owe duty to refrain from only reckless or intentional conduct toward other participants), the Court set forth the analysis to be followed in determining negligence liability generally:

Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owned, are determined by the circumstances surrounding the conduct of the individual.

Although it has been said that no universal test for duty ever has been formulated, our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that ha may result if it is not exercised. By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary person in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally "foreseeable," yet for pragmatic reasons, no recovery is allowed. A further inquiry must be made, for we recognize that "duty" is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree.

**2.** The cases cited by defendant in support of her argument are not to the contrary. Both Connecticut Supreme Court cases stand for the limited proposition that insanity may be a defense to negligence in the rare case where defendant is suddenly overcome without forewarning by a mental disability or disorder that incapacitates him from conforming his behavior to reasonable standards. See *Bushnell v. Bushnell,* 103 Conn. 583, 590, 131 A. 432 (1925) (individual who falls asleep at the wheel of a car is not liable for injuries resulting from a subsequent accident) and *King v. Connecticut Co.,* 110 Conn. 615, 617, 149 A. 219 (1930) (individual who is struck by seizure and rendered temporarily paralyzed is not contributorily negligent for failing to move out of the path of a trolley car).

Plaintiff also cites to *Fitzgerald v. Lawhorn,* 29 Conn.Supp. 511, 294 A.2d 338 (1972). There, the Connecticut Superior Court recognized that

"[t]he majority view appears to be that an insane person should be liable for torts of negligence," but refused to follow that rule, finding that "[t]here are only a handful of decisions at best on this subject [and n]o Connecticut cases were found as authority." *Id.* at 511, 294 A.2d 338. However, subsequent Superior Courts have adopted the majority rule. *See, e.g., Turner v. Caldwell,* 36 Conn.Supp. 350, 351, 421 A.2d 876, 876–77 (1980) (recognizing majority rule and finding that "[t]he weight of authority is that insane persons are liable for their negligent acts."). In any event, the Connecticut Supreme Court's decision in *Polmatier v. Russ,* 206 Conn. 229, 233 n. 4, 537 A.2d 468 (1988)—noting that the rule holding mentally deficient adults liable for their torts has been applied to negligence— would appear to impliedly overrule *Fitzgerald v. Lawhorn,* 29 Conn.Supp. 511, 294 A.2d 338 (1972).

The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results.

*Jawarski v. Kiernan,* 241 Conn. 399, ——, 696 A.2d 332, —— (Sup.Ct.1997).

Applying the above analysis, to the undisputed facts of this case, we conclude that Denittis is not liable for injuries suffered by Colman as a result of defendant's negligence. Plaintiff's injuries were certainly foreseeable, as Denittis was confined to the convalescent home because she was incapable of caring for herself or controlling her behavior. In addition, while some courts have expressed concern over the difficulties which triers of fact must encounter in determining the existence and degree of mental illness and its potential effect on liability for damage done, these concerns have no basis where, as here, defendant already has been determined incompetent in a court proceeding.

Moreover, as a matter of policy, it seems irrational to impose legal duty of care on defendant. Colman is not a stranger unable to anticipate or safeguard against harm when encountered. Rather, she is employed as a caretaker to tend to those, like defendant, who suffered from mental illness and/or were incapable of caring for themselves. Under these circumstances, it was plaintiff, not Denittis, who was in the best position to protect against the risks and the dangers she faced that stemmed from the very nature of her job.

Further, imposing liability on Denittis (or her estate) would not serve a beneficial purpose. While the common law rule imposing liability on incompetent adults stems from the belief that doing so would encourage caretakers or guardians of mentally deficient adults to restrict them so that they do not cause unnecessary damage to members of the public, Denittis already was confined to a restricted convalescent home at the time incidents. There is nothing more that her guardians or relatives could have done to protect others from defendant's negligent acts.

Several other states have found that there is no liability for injuries suffered by a paid hospital attendant as a result of a patient's negligence. *see Herrle v. Estate of Marshall,* 45 Cal.App.4th 1761, 53 Cal.Rptr.2d 713, 716 (1996); *Gould v. American Family Mutual Insurance Co.,* 198 Wis.2d 450, 543 N.W.2d 282, 283 (Sup.Ct.1996) (institutionalized individual cannot be liable for injuries caused to caretakers who are employed for financial compensation) *Mujica v. Turner* 582 So.2d 24, 24 (Fla.Dist.Ct.App.1991) (holding physical therapist could not recover from nursing home patient suffering from Alzheimer's disease who injured her)

In *Herrle v. Marshall,* 45 Cal.App.4th 1761, 53 Cal.Rptr.2d 713 (1996), plaintiff was an aide in a convalescent home for mentally incompetent adults, which housed many patients suffering from Alzheimer's disease. *Id.* at 715. She sued after the defendant, who was suffering from senile dementia and Alzheimer's disease, "struck plaintiff about the head several times causing serious jaw injuries." *Id.* In determining that defendant was not liable, the California court first recognized the common law rule, codified in California Civil Code § 41, that mentally incompetent adults are liable to those injured by their tortious activities. *Id.* The court then reasoned that "[b]ecause of the nature of the activity, caring for the mentally infirm, and the relationship between the parties, patient and caregiver, mentally incompetent parties should not owe a legal duty to protect caregivers from injuries suffered in attending to them." *Id.* 53 Cal. Rptr.2d at 719.

Similarly, in *Gould v. American Family Mutual Insurance Co.* 198 Wis.2d 450, 543 N.W.2d 282 (Sup.Ct.1996), the Court found that public policy considerations precluded finding the defendant, who suffered from Alzheimer's disease, liable for his negligence. *Id.* 543 N.W.2d at 286. The Court reasoned that plaintiff, who was the head nurse of the dementia unit, "was employed as a caretaker specifically for dementia patients and knowingly encountered the dangers associated with such employment." *Id.* at 287. The Court further reasoned that defendant's relatives already had done "everything they could to restrain him when they placed him in a secured dementia unit of a restricted

814

health center ... [They were] not likely in need of such further inducement." *Id.*

Applying the foregoing reasoning to the facts of this case, we find that, although a mentally disabled adult ordinarily is responsible for injuries resulting from her negligence, no such duty of care arises between an institutionalized patient and her paid caregiver.

## CONCLUSION

Accordingly, defendant's motion for summary judgment (document # 47) is GRANTED as to plaintiff's second count (negligence), but DENIED as to the third count (intentional tort)

So Ordered.