Paul C. BURCH, and Connie E. Burch, Plaintiffs-
Appellants,

v.

AMERICAN FAMILY MUTUAL INSURANCE CO., Defendant-
Respondent.†

Court of Appeals

*No. 92-0342. Submitted on briefs September 14,
1992.—Decided October 6, 1992.*

(Also reported in — N.W.2d —.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Ardell W. Skow,* of *Doar, Drill & Skow, S.C.* of Baldwin.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Nancy J. Sixel* and *Sverre O. Tinglum* of *Tinglum, Thorie & Sixel* of River Falls.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Paul and Connie Burch appeal a summary judgment dismissing their complaint against American Family Mutual Insurance Company. Paul and Connie contend that the trial court erred by finding, as a matter of law, that their fifteen-year-old daughter, Amy Burch, was incapable of negligence and that Paul was more negligent than Amy. They argue that the court applied the wrong legal standard to the questions concerning Amy's capacity for negligence and the compari-

son of negligence between Paul and Amy, and that disputed issues of material fact preclude summary judgment.

Because we conclude that the trial court applied an erroneous legal standard when it determined that, as a matter of law, Amy was incapable of negligence and Paul's negligence exceeded Amy's and disputed issues of material fact preclude summary judgment, we reverse and remand for trial.

In 1987, Paul drove his pickup truck to David Niederer's home to borrow a rototiller. Amy, who was fifteen at the time, rode in the passenger seat. Paul backed the truck into Niederer's driveway until it was three to four feet in front of Niederer's garage. Paul turned the truck off and got out, leaving the key in the ignition and the truck in reverse. Amy remained inside the truck with her seat belt on. While Paul was behind the truck talking to Niederer's wife and son, Amy turned on the ignition, propelling the truck backwards and pinning Paul's right leg between the truck and the center post of the garage. The truck continued to bang against Paul's leg until Niederer reached inside the truck and turned the ignition off.

Amy was born with cerebral palsy and mental retardation. As a result, she functions at an intellectual and physical level lower than that of an average person her age. According to Amy's treating physician, Dr. Gary Williams, and Dr. Paul Caillier, an independent psychologist consulted during the pendency of this case, Amy functions at the intellectual and physical level of an average preschooler aged three to six years old. She is unable to read, write or perform household chores without supervision, but is capable of understanding simple directives. Amy also has autistic tendencies. Her intel-

lectual and physical capacities have not changed significantly since 1987.

At deposition, Paul, Connie and Dr. Williams, however, testified that Amy knows, understands and conforms to the limits placed on her behavior. Paul and Connie further testified that: Amy can distinguish between her property and others' property; she is usually able to follow a daily routine without reminder; she is able to operate various household appliances such as a toaster, television, VCR, record player and tape player; she has memorized the content of certain books; she has given each of her stuffed animals a specific name; and she consistently obeyed instructions not to touch a motor vehicle's controls prior to the accident. Connie believes that Amy's internal thought processes operate at a higher level than her communication skills indicate, and that Amy functions at a higher level among family members and people she is familiar with.

Paul testified that he has specifically instructed Amy never to touch the keys in the truck and that he has never allowed her to sit behind the steering wheel or touch other controls in the truck. Paul further testified that Amy had always obeyed this instruction and had never touched a motor vehicle's controls prior to the accident.

Paul suffered painful injuries to his right leg, ankle and foot as a result of the accident. He continues to experience pain, his physical activities are restricted and he expects to experience pain and incur medical expenses in the future.

American Family insured Amy for damages caused by her negligent acts under a policy that was in effect when the accident occurred. Paul filed a summons and complaint seeking an unspecified amount of damages. American Family moved for summary judgment, argu-

ing, among other things, that Amy's mental deficiency rendered her incapable of negligence and that Paul was more negligent than Amy as a matter of law.

The trial court, relying on *Breunig v. American Family Ins. Co.*, 45 Wis. 2d 536, 173 N.W.2d 619 (1970), determined that Amy was incapable of negligence as a matter of law because her mental deficiency affected her ability to understand and appreciate her duty of care, and she had no forewarning of her incapacity, which existed since her birth. Citing *Ceplina v. South Milwaukee School Bd.*, 73 Wis. 2d 338, 243 N.W.2d 183 (1976), the court ruled that Paul's negligence exceeded Amy's as a matter of law, based on Paul's prior knowledge of Amy's condition and failure to remove the key from the ignition. The trial court therefore granted American Family summary judgment.

When reviewing a grant of summary judgment, we apply the same methodology as the trial court. *Schultz v. Industrial Coils, Inc.*, 125 Wis. 2d 520, 521, 373 N.W.2d 74, 74 (Ct. App. 1985). Paul and Connie assert that the trial court erred by concluding, as a matter of law, that Amy's mental deficiency rendered her incapable of negligence and that Paul's negligence exceeded Amy's. We are not bound by the trial court's conclusions of law and review the matter without deference to the trial court. *Anderson v. Milwaukee Ins.*, 161 Wis. 2d 766, 769, 468 N.W.2d 766, 768 (Ct. App. 1991).

## AMY'S INCAPABILITY OF NEGLIGENCE AS A MATTER OF LAW

While children under the age of seven are incapable of negligent conduct in Wisconsin, sec. 891.44, Stats., Amy is fifteen years old, well beyond the age where negli-

gence may not be attributed to her. "It is undisputed that a minor seven years old or older is capable of being negligent." *Willenbring v. Borkenhagen,* 29 Wis. 2d 464, 467, 139 N.W.2d 53, 55 (1966). The statute and Wisconsin case law speak in terms of a child's chronological age in years, not a child's functional age in terms of intellectual and physical ability. We conclude that based upon Amy's chronological age, she is capable of negligence unless, under the particular facts of the case, she was so functionally incapacitated that she was incapable of negligence as a matter of law. Our inquiry, therefore, is whether undisputed facts demonstrate an incapacity so great that it precludes attributing negligence to Amy.

American Family argues that *Breunig* supports its proposition that Amy's mental deficiency, as a matter of law, renders Amy incapable of negligence. Paul and Connie argue that *Breunig* is inapplicable because Amy is a minor and the Wisconsin jury instructions distinguish between minors and adults in negligence cases. We reject both of these arguments.

In *Breunig,* our supreme court ruled that some forms of insanity preclude liability for negligence. *Id.* at 540–41, 173 N.W.2d at 623.

> The question of liability in every case [in which insanity is proffered as a defense] must depend upon the kind and nature of the insanity. The effect of the mental illness . . . or disorder must be such as to affect the person's ability to understand the duty [to use ordinary care] which rests upon him . . .. And in addition, there must be an absence of notice or forewarning to the person that he may be suddenly subject to such a type of insanity or mental illness.

*Id.* at 541, 173 N.W.2d at 623. Whether the insanity is a type that affects a person's ability to understand the

likely consequences of her conduct and her duty to exercise ordinary care and whether the person was forewarned of the condition are questions of fact for the jury. *Id.* at 545, 173 N.W.2d at 625.

While Caillier and Williams opined that Amy functions at the intellectual and physical level of an average preschooler aged three to six, neither offered a definitive opinion as to whether Amy was able to understand the consequences of her actions and her duty to exercise ordinary care. While the experts' opinions may provide a basis for a determination that Amy did not have sufficient capacity to act negligently, Paul and Connie's testimony contradicted these opinions. Paul and Connie assert that Amy's internal thought processes operate at a higher level than her communication skills indicate, and that Amy functions at a higher level among family members and people she is familiar with. They further assert that Amy is capable of understanding the instruction not to touch a motor vehicle's keys or controls and had always complied with this instruction in the past. Williams testified that Amy was capable of realizing through observation that turning the key in the ignition starts an automobile.

We conclude that summary judgment on the issue of Amy's capacity for negligence, based upon the experts' opinions, was inappropriate. "[B]ecause opinion testimony always is subject to evaluation by the fact finder, it generally has been held not an appropriate basis for summary judgment." *Dean Medical Center, S.C. v. Frye,* 149 Wis. 2d 727, 733, 439 N.W.2d 633, 635 (Ct. App. 1989) (quoting 10A C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE & PROCEDURE § 2738, at 502–04 (1983)). Moreover, the expert testimony fails to conclusively establish that Amy's mental deficiency renders her incapable of

appreciating the consequences of her conduct and acting accordingly. "A summary judgment should not be granted unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy." *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 477 (1980).

If the jury believes the testimony of Amy's parents, who have interacted with her daily since her birth, regarding Amy's intellectual capabilities, it would be reasonable for the jury to conclude that Amy understands the consequences of her conduct and is able to act accordingly. On the other hand, if the jury believes the experts' testimony and infers that Amy's mental retardation, cerebral palsy or autistic tendencies prevent her from appreciating her duty to refrain from certain acts, it would be reasonable for the jury to conclude that Amy is not negligent. We conclude that whether a retarded person possesses the ability to act negligently cannot be determined solely by the labels placed upon him or her, but rather requires proof of his or her capacities. Here, Amy's capacity for negligence is a fact-sensitive issue that should be resolved by the fact finders based upon the evidence bearing on the degree and extent of Amy's capacity.

## PAUL'S NEGLIGENCE AS A MATTER OF LAW

The trial court determined that because, in its view, "no properly instructed jury could fail to find that [Paul] was not more negligent than Amy," Paul's negligence exceeded Amy's as a matter of law. However, it is inappropriate to apportion negligence to either actor as a matter of law in this case because there exists a dispute regarding Amy's capacity to be negligent. The jury must

determine Amy's capacity for negligence before they can determine if, and to what extent, her conduct was negligent. Only after the jury has made this determination can they meaningfully compare Amy's and Paul's negligence.

Further, the degree of Paul's negligence depends upon the jury's determination of the extent of Amy's ability to understand and conform to Paul's instruction not to touch a motor vehicle's controls. If the jury finds that Amy is capable of understanding and conforming to that instruction, that determination would affect the apportionment of negligence between Paul and Amy. We acknowledge that the jury may find that Amy is not negligent, or that her negligence is modest compared to Paul's because he parked the truck in reverse and left the key in the ignition within her reach. However, it is also possible for the jury to find that Amy's capability to understand the instruction not to touch the truck's controls and her past adherence to this instruction mitigate Paul's negligence.

Questions of the apportionment of negligence are within the peculiar province of the jury. *Stewart v. Wulf,* 85 Wis. 2d 461, 471, 271 N.W.2d 79, 84 (1978). While we understand the trial court's concern in comparing the negligence of a fifteen-year-old mentally deficient child to that of her mature adult parent, we conclude that it is prudent to apply the general rule that it is the jury's function to compare negligence. *See Collins v. Eli Lilly Co.,* 116 Wis. 2d 166, 199, 342 N.W.2d 37, 53 (1984).

*By the Court.*—Judgment reversed.