DEBORAH S.S., Plaintiff-Appellant,†

v.

YOGESH N.G., M.D., and Wisconsin Patients Compensation Fund, Defendants-Respondents.

Court of Appeals

*No. 92-2048. Submitted on briefs February 11, 1993.—Decided March 24, 1993.*

(Also reported in 499 N.W.2d 272.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Morganne L. MacDonald* of *MacDonald & Macdonald, S.C.* of Union Grove.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Einer Christensen* of *Constantine, Christensen & Krohn, S.C.* of Racine.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J.   The issue on appeal is whether improper sexual conduct by a physician against a patient committed during the course of a physical examination is negligent or intentional conduct. Deborah S.S., the patient, alleged such conduct in her complaint against Dr. Yogesh N.G., the physician.[1] The patient alleged that the conduct constituted negligence. At summary judgment, the physician contended that the conduct, if true, was intentional. As a result, the physician argued that the patient's action was brought beyond the two-year statute of limitations governing intentional acts. The trial court agreed and dismissed the patient's complaint.[2] The patient appeals. We affirm the judgment dismissing the complaint.

---

[1] Because the reputations of both parties are at stake in this case and because this case did not proceed to disposition on the merits of the allegation, we refer to them by their roles as physician or patient, not by their last names.

[2] The parties entered into an unusual stipulation which led to the trial court's judgment in this case. The parties agreed to allow the trial court to enter an order dismissing the patient's complaint on the grounds that the patient's action was untimely. This

438

## BACKGROUND

The patient was referred to the physician for a neurological examination. The examination occurred on September 15, 1988. Part of this procedure required the physician to perform a sensory examination. During this portion of the examination, the patient alleges that the physician inappropriately touched the vaginal, buttock, and breast areas of her body. She also alleges that she felt the physician's erect penis against her body during this time. The parties agree that this alleged conduct did not serve any medical reason related to the examination which the physician was required to perform on the patient.

The patient filed her action on December 19, 1990. Her complaint alleges the physician's conduct was negligent and "[h]ad no medical purpose or reason."

---

stipulation also recites that, despite the patient's agreement to the dismissal, she does not acquiesce in the court's ruling. On the one hand, we are uncertain whether the "ruling" referenced by this language means a previous decision of the court that the action was untimely. If so, no such ruling or decision is revealed by the appellate record. On the other hand, this provision may refer to the anticipated dismissal order of the trial court based on the stipulation. This language also leaves us wondering whether the trial court consciously ruled on the substantive merits of the issue on appeal, or whether the court simply accepted the parties' stipulation that the action should be dismissed because the statute of limitations expired.

The stipulation also provides that, despite her stipulation to the dismissal, the patient retains her right to appeal. This language raises the prospect of waiver. We wonder if a litigant can preserve such right and yet stipulate to a dismissal. However, since the respondents raise no such claim, we do not address the matter any further.

The physician moved for summary judgment, arguing that the patient's action was barred by sec. 893.57, Stats., the two-year statute of limitations governing intentional torts.[3] The patient responded that her action was governed by sec. 893.55, Stats., the three-year statute of limitations governing medical malpractice actions.[4]

The critical portions of the summary judgment record consist of the parties' depositions and their testimony given in a related proceeding before the Wisconsin Department of Regulation and Licensing Medical Examining Board. Although this record is extensive, it essentially boils down to what we have described above—the patient's allegations, the physician's denials, and the parties' agreement for purposes of the statute of limitations question that the alleged conduct must be taken as true.

The trial court agreed with the physician that the summary judgment record demonstrated his alleged conduct to be intentional. The court therefore dismissed the patient's complaint because she did not bring the action within the two-year statute of limitations governing intentional torts. She appeals.

---

[3] Section 893.57, Stats., provides:

**Intentional torts.** An action to recover damages for libel, slander, assault, battery, invasion of privacy, false imprisonment or other intentional tort to the person shall be commenced within 2 years after the cause of action accrues or be barred.

[4] Section 893.55(1), Stats., provides, in relevant part:

[A]n action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:

    (a)   Three years from the date of the injury . . ..

## ANALYSIS

We review a summary judgment under the same methodology as the trial court, and we are not bound by the trial court's ruling. *Burch v. American Family Mut. Ins. Co.*, 171 Wis. 2d 607, 612, 492 N.W.2d 338, 340 (Ct. App. 1992).

We make an important preliminary observation. The patient agrees that the physician's actions were intentionally committed. Nonetheless, she contends that his actions should be governed by the three-year statute of limitations governing medical malpractice claims. We will now address her specific arguments in support of this claim.

The patient argues that the enactment of ch. 655, Stats., governing health care liability and patients' compensation, usurped the field regarding actions against health care providers and salvages her action. We agree with the patient that, in many respects, ch. 655 has usurped the field. For instance, in *Rineck v. Johnson*, 155 Wis. 2d 659, 456 N.W.2d 336 (1990), *cert. denied*, 111 S.Ct. 787 (1991), the supreme court ruled that the medical malpractice damage provisions of ch. 655 prevailed over the damage limitations set out in the wrongful death statute. *Rineck*, 155 Wis. 2d at 665, 456 N.W.2d at 339. In so holding, the supreme court said:

> Chapter 655, Stats. . . . established an exclusive procedure for the prosecution of malpractice claims against a health care provider . . . .. Chapter 655 sets tort claims produced by medical malpractice apart from other tort claims, and parties are conclusively presumed to be bound by the provisions of the chapter regardless of injury or death.

*Id.* (citation omitted).

441

However, this language, standing alone, does not support the patient's argument that the three-year statute of limitations governing negligent acts should apply to this case. Chapter 655, Stats., contains no statute of limitations. Chapter 655 actions cannot stand in a statute of limitations vacuum; obviously, some statute of limitations must apply.

The patient argues that *Rineck* bridges this gap, serving to "conjoin" ch. 655, Stats., actions with sec. 893.55, Stats., the three-year statute of limitations governing medical malpractice acts. However, in *Rineck*, the supreme court noted that the legislature had expressly provided for the recovery of noneconomic damages in a ch. 655 malpractice proceeding. *Rineck*, 155 Wis. 2d at 666-67, 456 N.W.2d at 340. Thus, the court concluded that this specific statute superseded the general ceiling on noneconomic damages set out in the wrongful death statute. *Id.* at 668, 456 N.W.2d at 341.

The same statement cannot be made in this case. As we have noted, ch. 655, Stats., is silent as to the applicable statute of limitations. Thus, we have no specific statement in ch. 655 which supersedes any other statute of limitations found elsewhere in the statutes. Thus, *Rineck* does not answer the statute of limitations question posed by this case.

The patient next argues that because this is not a classic nonconsent sexual assault case, the three-year medical malpractice statute of limitations should apply. She bases this argument on the fact that the physician's acts were unnecessary and improper.

The patient correctly observes that the Wisconsin Supreme Court has held that unnecessary and improper treatment constitutes malpractice. *Northwest Gen.*

*Hosp. v. Yee,* 115 Wis. 2d 59, 61-62, 339 N.W.2d 583, 585 (1983). However, that supreme court statement rests on the premise that the malpractice conduct is part of the *medical treatment* accorded to the patient. In discussing unnecessary and improper treatment, the *Yee* court cited to an earlier case, *Kuechler v. Volgmann,* 180 Wis. 238, 192 N.W. 1015 (1923), *overruled on other grounds, Kerkman v. Hintz,* 142 Wis. 2d 404, 418 N.W.2d 795 (1988), which stated: "Malpractice may consist in a lack of skill or care in diagnosis as well as in treatment. . .. [T]hrough a lack of skill and care the defendant negligently undertook to treat plaintiff for a malady from which he was not suffering . . .." *Kuechler,* 180 Wis. at 242-43, 192 N.W. at 1017. Thus, where the form of malpractice is alleged to be unnecessary and improper treatment, such malpractice conduct must constitute part of the treatment.

Here, as we have noted, the parties agree that the acts alleged against the physician did not serve any medical reason related to the examination which the physician was required to perform upon the patient. Therefore, the physician's offending conduct was not part of the medical treatment accorded to the patient. Thus, this is not a case controlled by *Yee.*[5]

The patient also cites to *L.L. v. Medical Protective Co.,* 122 Wis. 2d 455, 362 N.W.2d 174 (Ct. App. 1984), in support of her argument. In *L.L.,* a psychiatrist engaged in sexual activity with a female patient who was experiencing "difficulty in maintaining healthy interpersonal

---

[5] The language of sec. 893.55(1), Stats., the three-year medical malpractice statute of limitations, appears to support this approach: "an action to recover damages for injury *arising from any treatment or operation* performed by . . . a health care provider." (Emphasis added.)

relationships, particularly relationships with men." *Id.* at 457, 362 N.W.2d at 175. The court of appeals concluded that such conduct fell within an insurance policy's definition of "professional services." *Id.* at 459, 362 N.W.2d at 176.[6]

The court of appeals premised its holding on the "transference phenomenon" which exists in such a treatment relationship and setting. *Id.* at 461, 362 N.W.2d at 177.

> The "transference" . . . is the emotional reaction which the patient in therapy has toward the therapist. . ... The development of the transference "may be coincident with an identification with the therapist whereby the patient learns to think, style and model himself after the therapist." . . .. The patient "develops extreme emotional dependence on the therapist."

*Id.* (citations omitted).

Undoubtedly, every patient places trust in the treating physician. However, this case does not present the "transference phenomenon" unique to the treatment relationship between a psychiatrist and the patient. As such, *L.L.* does not govern this case, and we decline to extend it to the more conventional treatment setting present here.

The patient also contends that she should not be penalized for not immediately knowing or recognizing the impropriety of the physician's conduct. We agree. However, this argument has no bearing on *which* statute of limitations applies. Rather, it bears only upon *when* the applicable statute begins running.

---

[6] The case before us does not involve the meaning of "professional services" under an insurance policy. On this threshold basis, we doubt that *L.L.* is binding in this case.

In *Hansen v. A.H. Robins Co.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578, 583 (1983), the Wisconsin Supreme Court adopted the "discovery" rule for the accrual of a cause of action in tort. Under this rule, the statute of limitations begins to run when the claimant discovers the injury, or in the exercise of due diligence should have discovered the injury. *Id.*

In *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 388 N.W.2d 140 (1986), the supreme court extended the discovery rule to the cause component of an injury. The court ruled that, even where the injury is known, the statute of limitations does not begin running until the claimant has an objective belief to a reasonable degree of certainty as to the cause of the injury. *Id.* at 411-15, 388 N.W.2d at 146-47.

Thus, the law has already addressed the concerns expressed by the patient in this case.

We are not persuaded by any of the patient's arguments as to why the physician's intentional conduct should be governed by the statute of limitations governing medical malpractice negligence actions. Instead, we conclude that the physician's alleged intentional conduct should be governed by sec. 893.57, Stats., the statute of limitations governing intentional torts. We affirm the summary judgment dismissing the patient's complaint.

*By the Court.*—Judgment affirmed.