284 Wis.2d 493 (2005)
2005 WI App 125
700 N.W.2d 277
J.W., Plaintiff-Respondent,
v.
B.B., M.D., et. al., Defendant-Appellant.
G.M., Plaintiff-Respondent,
v.
B.B., M.D., et al., Defendant-Appellant.
Nos. 2004AP9, 2004AP11.
Court of Appeals of Wisconsin.
Submitted on briefs November 8, 2004.
Decided May 26, 2005.
On behalf of the defendant-appellant, the cause was submitted on the briefs of John W. Markson of Bell, Gierhart & Moore, S.C., Madison.
On behalf of the plaintiffs-respondents, the cause was submitted on the briefs of Eric J. Haag of Gingras, Cates & Luebke, S.C., Madison.
Before Deininger, P.J., Vergeront and Higginbotham, JJ.
*496 ¶ 1. DEININGER, P.J.
We granted a physician leave to appeal two orders that compel him to respond to certain discovery requests from the plaintiffs in these two medical malpractice actions. The physician claims the trial court erred when it ordered him to disclose his sexual orientation, his employment history and any prior complaints against him involving conduct similar to what the plaintiffs have alleged in this action. We conclude the trial court did not erroneously exercise its discretion in ordering disclosure of the physician's employment history and prior complaints regarding his practice of medicine. We also conclude, however, that the court erred in ordering the physician to disclose his sexual orientation because it is not relevant to the issues in this case and is not reasonably calculated to lead to the discovery of admissible evidence.

*497 BACKGROUND
¶ 2. The plaintiffs filed a complaint alleging the physician was "negligent in his care and treatment" for performing digital-rectal prostate exams on them during pre-employment medical examinations.[1] They also alleged the physician failed to obtain their informed consent before performing the exams. The plaintiffs asserted that the physician told them the prostate exams were required for their employment physicals.
¶ 3. During a deposition of the physician, his attorney objected to the following questions put by plaintiffs' counsel, stating as grounds that the questions were irrelevant and not reasonably calculated to lead to the discovery of admissible evidence:
Are you aware of any complaints that any individuals made against you while you were at [a former employment] alleging inappropriate touching?
Why did you leave [employment with another health care provider]?
What is your sexual orientation, doctor?
On advice of his counsel, the physician did not answer these questions.
¶ 4. The plaintiffs filed a motion to compel discovery regarding the physician's sexual orientation, prior complaints against him and his employment history. The circuit court, citing a case that upheld the admission of evidence of a criminal defendant's homosexuality as being probative of his motive for committing the charged *498 crime,[2] reasoned that disclosure of the physician's sexual orientation could lead to evidence of his motive for conducting the digital-rectal exams. The court did not separately discuss the request for information regarding past complaints against the physician and his employment history. The court explained that it was not ruling on the admissibility of any of the requested information, only that the physician must respond because his responses might lead to the discovery of admissible evidence. The court also directed the parties to submit "a good, strong protective order on any answers that might be compelled."
¶ 5. The court entered orders requiring the physician to disclose: (1) his "sexual orientation"; (2) "other complaints by inmates, clients, patients, or examinees, to the effect that [he] touched them inappropriately or unnecessarily did rectal or prostate exams"; and (3) "the reasons [he] left previous professional employment." We granted the physician's petition for leave to appeal the orders compelling discovery. See WIS. STAT. § 808.03(2).[3]

ANALYSIS
¶ 6. Whether to compel a party to disclose information requested in discovery is committed to the circuit court's discretion. See Earl v. Gulf & W. Mfg. Co., *499 123 Wis. 2d 200, 204, 366 N.W.2d 160 (Ct. App. 1985). Properly exercised discretion involves "a statement on the record of the trial court's reasoned application of the appropriate legal standard to the relevant facts of the case." Id. at 204-05. If the circuit court does not fully explicate its reasoning, we may "examine the record to determine whether the facts support" its decision. Id. at 205. If, however, the circuit court bases its decision on an error of law, it has erroneously exercised its discretion. Id.
¶ 7. The scope of permissible discovery in a civil suit is established by WIS. STAT. § 804.01(2)(a), which provides as follows:
Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party .... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
The physician does not claim that any of the information he was ordered to disclose is privileged. Rather, his claim is that his sexual orientation, past complaints against him, and his employment history are not relevant to any claim or defense in these actions, and, further, that the requested information is not reasonably calculated to lead to the discovery of admissible evidence.
¶ 8. We first address the ordered disclosure of the physician's sexual orientation. Relevant evidence is evidence that has a "tendency to make the existence of any fact that is of consequence to the determination of *500 the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01. The physician contends that his motive for conducting the examinations at issue is of no consequence to the determination of the plaintiffs' malpractice and lack of informed consent claims because both causes of action sound in negligence, where the only question is whether his conduct met the applicable standard of professional care. We agree.
¶ 9. The applicable three-year statute of limitations describes a medical malpractice action as one "to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider." WIS. STAT. § 893.55(1). To prevail, the plaintiffs must prove that the physician committed a negligent act (or omission) that caused the plaintiffs injury or damages. Paul v. Skemp, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860. The plaintiffs so allege in their first cause of action: "[the physician], through his acts and omissions, was negligent in his care and treatment of [the plaintiffs], including but not limited to his conducting of the prostate examinations," which resulted in "pain, suffering, fright, embarrassment and emotional distress" on the part of the plaintiffs.
¶ 10. The plaintiffs' allegations in this case bear some similarities to the facts in Deborah S.S. v. Yogesh, 175 Wis. 2d 436, 442-43, 499 N.W.2d 272 (Ct. App. 1993), where the plaintiff claimed a physician touched her inappropriately during a neurological examination. As in Deborah S.S., these actions were filed between two and three years after the conduct in question, and thus, any claims of medical malpractice were timely filed, but any assault or battery claims would be time-barred. *501 See id. at 445. Unlike the plaintiff in Deborah S.S., however, the present plaintiffs do not allege the physician touched them in places or in ways that served no medical purpose or reason, such that the prostate exams were not a part of the medical treatment the physician provided. See id. at 443 (noting that "the parties agree that the acts alleged against the physician did not serve any medical reason," and thus "the physician's offending conduct was not part of the medical treatment accorded the patient."). Rather, the gravamen of the present plaintiffs' claims is that, under the applicable standard of professional care, performing digital-rectal prostate exams on healthy, twenty-five-year-old males during pre-employment physicals was "unnecessary and improper treatment," thus constituting medical malpractice. See id. at 442-43.
¶ 11. Because the plaintiffs' claims sound in medical malpractice, the fact at issue is whether the prostate exams were necessary and proper medical treatment under the circumstances. There is no dispute that the physician intended to and did perform digital-rectal prostate exams on the plaintiffs. Aside from whether the exams caused the plaintiffs any injury or damages, the only "fact of consequence" to the outcome of this litigation is whether the performance of the exams on these plaintiffs during their pre-employment physicals conformed to the requisite standard of professional care. If performing the exams constituted "unnecessary and improper" treatment under the standard of care, the physician was negligent and is liable for any injury or damages that resulted, even if his only motive for performing the exams was a good-faith belief that the exams were medically necessary and proper.
¶ 12. Conversely, if performing the exams was consistent with "the degree of care, skill, and judgment *502 which reasonable [physicians] would exercise in the same or similar circumstances, having due regard for the state of medical science at the time plaintiff[s were] treated,"[4] the physician was not negligent and cannot be held liable for any pain, embarrassment or emotional distress the procedures may have caused. This is so even if the physician also had a non-professional motive for performing the exams. In short, the physician's motive or intent in conducting the exams is simply not relevant to the dispositive inquiry, which is solely an objective determination.
¶ 13. The plaintiffs contend, however, that "[m]otive evidence makes it more probable that [the physician] deviated from the standard of care by showing that his actions were incongruent with medical requirements." We reject this contention. What the physician did or did not do during the plaintiffs' pre-employment physicals will be established by the testimony of the parties. What the standard of professional care requires or permits a physician to do or not do under the circumstances will be established by the testimony of medical experts. Quite simply, the physician's motive for conducting the exams has no tendency to make it more or less probable that "his actions were incongruent with medical requirements" because that determination turns exclusively on a comparison of what the physician did to what a "reasonable physician" would have done "in the same or similar circumstances."[5]
¶ 14. We reach the same conclusion regarding the plaintiffs' informed consent causes of action. The plaintiffs' *503 claims that the physician did not obtain their informed consent prior to the digital-rectal exams are also grounded on a negligence theory. See Schreiber v. Physicians Ins. Co., 223 Wis. 2d 417, 427, 588 N.W.2d 26 (1999) (noting that "negligence  the doctor's failure to exercise reasonable care to a patient" is now the "theoretical underpinning" of the informed consent doctrine). The relevant inquiries focus on what a reasonable patient would want to know before consenting to a given procedure: "did the physician fail to give information that a reasonable patient would want to know? .... [And,] given the additional information, would the reasonable patient have acted differently than they did without the information?" Id. at 434. Again, these are objective, not subjective determinations, and they are wholly unrelated to the physician's motive for performing the exams.
¶ 15. Regarding the alleged lack of informed consent, the plaintiffs assert in their complaint that the physician "failed to properly advise them of the risks, options, alternatives, or necessity associated with" the prostate examinations. The facts of consequence in determining whether the physician performed the prostate exams without the plaintiffs' informed consent are (1) what he told them and (2) what he "should have" told them under the standard quoted in the preceding paragraph. As with the plaintiffs' malpractice claims, the physician's motive for conducting the exams, for telling the plaintiffs what he did regarding the exams, or for failing to tell them more, are simply of no consequence to the determination of the informed consent claims.
¶ 16. The plaintiffs assert that it is not they but the physician who has injected the issue of motive into this case by claiming that, in performing the digital-rectal *504 exams, "he was fulfilling his best medical judgment." The defense of medical malpractice claims, however, routinely involves contentions that the defendant physician's conduct was consistent with accepted medical practice. The relevant and dispositive question is not whether the physician believed his actions were consistent with the standard of professional care, but whether his actions were in fact consistent with the standard. We emphasize again that, if the physician's actions fell below the requisite standard, he will be liable for damages he caused even if his motives were solely professional; he will not be liable if he did not violate the professional standard, regardless of what prompted him to provide the treatment he did. To prevail, the plaintiffs must establish that the prostate exams were "unnecessary and improper" medical treatment, Deborah S.S., 175 Wis. 2d at 443, not by establishing some improper motive on the part of the physician for performing the procedures.
¶ 17. The plaintiffs also attempt to rely on the criminal cases the circuit court cited in its ruling, and they undertake an analysis of the admissibility at trial of evidence of the physician's sexual orientation under State v. Sullivan, 216 Wis. 2d 768, 576 N.W.2d 30 (1998). The present negligence-based actions, however, bear no similarity to criminal prosecutions where, in order to prevail, the State generally must prove that a defendant's illegal conduct was intentional, and often that the defendant possessed a specific wrongful intent, such as sexual gratification or to deceive or inflict harm on the victim. As we have explained, there is no dispute in this case that the physician intentionally performed the exams in question. His civil liability for performing them does not turn on his state of mind when performing them but on whether objective standards of professional care were violated.
*505 ¶ 18. Finally, we acknowledge that, even though we have concluded the physician's sexual orientation is not "relevant to the subject matter involved" in this action and would be inadmissible at trial for that reason,[6] the physician might still be ordered to disclose this information if it "appears reasonably calculated to lead to the discovery of admissible evidence." WIS. STAT. § 804.01(2)(a). The plaintiffs, however, have pointed to no potentially admissible evidence to which the disclosure of the physician's sexual orientation might lead. That is, the plaintiffs make no argument that learning the physician's sexual orientation is a necessary intermediate step that will permit them to discover other, potentially admissible evidence.
¶ 19. Because the physician's sexual orientation is not relevant to any claim or defense in this action, and the plaintiffs have not identified any admissible evidence to which the disclosure might lead, we conclude the circuit court erred in ordering the disclosure of the physician's sexual orientation. See WIS. STAT. § 804.01(2)(a). By analogizing these malpractice actions to criminal prosecutions and concluding that motive evidence is relevant and potentially admissible at trial, the circuit court based its decision on an error of law. The court thus erroneously exercised its discretion in *506 ordering the physician to disclose his sexual orientation. We reverse the appealed orders insofar as they require the physician to disclose his sexual orientation.
¶ 20. We turn to the remaining provisions in the appealed orders. These require the physician to disclose "other complaints by inmates, clients, patients, or examinees, to the effect that [he] touched them inappropriately or unnecessarily did rectal or prostate exams, and ... the reasons [he] left previous professional employment." The physician contends that this information, like his sexual orientation, is irrelevant to the subject matter of the litigation and would be inadmissible at trial. He notes that, under WIS. STAT. § 904.04(2), evidence of "other ... acts is not admissible to prove the character of a person to show that the person acted in conformity therewith." The physician asserts that evidence he has been the subject of complaints or discipline for performing unnecessary rectal examinations, if these facts exist, would not be admissible for the purpose of showing that he was professionally negligent in performing the exams on the plaintiffs in this case. For that reason, the physician argues he should not be compelled to disclose any arguably similar "other acts" during discovery.
¶ 21. We agree that evidence of a person's "other acts" cannot be offered to show his or her character or "propensity" to behave in a certain way, in order to permit a fact finder to infer the person acted in conformity with that propensity on a particular occasion. See Sullivan, 216 Wis. 2d at 783. However, evidence of "other acts" may be admitted under WIS. STAT. § 904.04(2) when offered for a purpose other than showing that the person's actions at issue in the present *507 litigation were "in conformity" with his or her character. See id. As to the permissible purposes for introducing "other acts" evidence, the physician asserts that "the only exceptions to WIS. STAT. § 904.04(2) are directly related to the proof of motive or intent." We disagree.
¶ 22. As we have explained, the physician's motive or intent in performing the rectal exams on these plaintiffs is not relevant to the dispositive question of whether he violated the standard of professional care in performing the exams. We therefore agree with the physician that proof of his motive or intent in conducting the rectal exams would not provide a basis for introducing evidence of his "other acts" at trial. We reject, however, the physician's contention that the permissible purposes for admitting other acts evidence are limited to efforts to establish a person's state of mind. The listing of acceptable purposes for introducing other acts evidence set forth in WIS. STAT. § 904.04(2) is exemplary, not exclusive. See Sullivan, 216 Wis. 2d at 783.
¶ 23. We can envision circumstances in which the plaintiffs might be entitled to admit evidence that the physician was previously sanctioned for conduct similar to that complained of in this action, if such evidence exists. For example, the physician might testify that he customarily performs digital-rectal prostate exams on healthy twenty-five-year-old males because, in his professional opinion, doing so comports with the standard of care. In that event, evidence that the physician was disciplined or discharged for performing unnecessary prostate exams under similar circumstances might be admissible to impeach the credibility of this testimony.
¶ 24. Conversely, the physician might testify that, ordinarily, he would not perform prostate exams on *508 healthy young males during routine physicals but, on these two occasions, he discerned medical reasons for doing so. Evidence, if it exists, that he has been the subject of complaints or sanctions for performing medically unnecessary prostate exams in the past might then be admissible to establish the physician's "habit" of performing medically unnecessary prostate exams. See WIS. STAT. § 904.06. Such evidence would not only tend to impeach the physician's testimony, but it might also be used to show that his present conduct "was in conformity with the habit." See id.; Steinberg v. Arcilla, 194 Wis. 2d 759, 765-70, 535 N.W.2d 444 (Ct.App.1995) (distinguishing "habit" evidence from "character" evidence and concluding trial court did not err in admitting evidence in a malpractice action of a physician's habit of positioning a patient's arms during surgery).
¶ 25. We emphasize that we do not determine here whether any information the physician provides in response to the appealed orders will necessarily be admissible at trial. The future evidentiary rulings are committed to the sound discretion of the circuit court, to be based on the testimony and other evidence adduced at trial and the specific nature of the proffered evidence and objections to it. Admissibility of any "other acts" evidence at trial may also turn on the circuit court's discretionary weighing of its probative value versus the danger of unfair prejudice or other considerations. See WIS. STAT. § 904.03. For present purposes, however, we cannot conclude that the order to the physician to disclose "other complaints by inmates, clients, patients, or examinees, to the effect that [he] touched them inappropriately or unnecessarily did rectal or prostate exams, and ... the reasons [he] left previous professional employment" is not "reasonably *509 calculated to lead to the discovery of admissible evidence" under WIS. STAT. § 804.01(2)(a).
¶ 26. Accordingly, we conclude that the circuit court did not erroneously exercise its discretion in ordering these disclosures as being within the scope of permissible discovery. We note that the circuit court directed the parties to attempt to agree on the wording of a "protective order" designed to ensure that any disclosures in response to the discovery order are not made public. The record before us does not indicate whether such an order has been agreed upon or entered. Our understanding of the circuit court's remarks when it granted the plaintiffs' discovery motions is that the physician will not be required to make the ordered disclosures until the court has entered a protective order to preserve the confidentiality of his responses until further order of the court.

CONCLUSION
¶ 27. For the reasons discussed above, we reverse the appealed orders insofar as they require the physician to disclose his sexual orientation. We affirm the orders in all other respects.
By the Court.  Orders affirmed in part; reversed in part and cause remanded.
*510 
NOTES
[1] The two plaintiffs filed a joint complaint in a single action. The circuit court ordered the plaintiffs' claims severed from one another. We have consolidated the two actions for purposes of this appeal.
[2] See State v. Brecht, 143 Wis. 2d 297, 320-21, 421 N.W.2d 96 (1988).
[3] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted. The physician also petitioned for leave to appeal the circuit court's orders denying his motions for summary judgment. We denied leave to appeal the summary judgment orders. Only the discovery orders are before us.
[4] WIS JI  CIVIL 1023; see Nowatske v. Osterloh, 198 Wis. 2d 419, 438-39, 543 N.W.2d 265 (1996).
[5] See footnote 4, above.
[6] The parties discuss at some length whether evidence of the physician's sexual orientation would be unfairly prejudicial if admitted at trial. However, only relevant evidence is subject to exclusion on the grounds that "its probative value is substantially outweighed by the danger of unfair prejudice." See WIS. STAT. § 904.03. "Evidence that is not relevant is not admissible," even if it is wholly benign. See WIS. STAT. § 904.02. We have concluded the physician's sexual orientation is not relevant to the subject matter of this action, rendering unnecessary any consideration of its potential for unfair prejudice.