**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 9, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP588**

Cir. Ct. No. **2021CV854**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

---

**MARY A. HENSLEY AND SPRIGGIE N. HENSLEY, SR.,**

   **PLAINTIFFS-APPELLANTS,**

 **V.**

**FROEDTERT SOUTH, INC.,
FROEDTERT SOUTH, INC. - SOMERS CLINIC,
FROEDTERT SOUTH, INC. - KENOSHA HOSPITAL,
FROEDTERT SOUTH, INC. - PLEASANT PRAIRIE HOSPITAL,
MMIC INSURANCE, INC. AND NEIL SHEPLER, M.D.,**

   **DEFENDANTS-RESPONDENTS,**

**REBEKAH COSTELLO, D.O.,**

   **DEFENDANT.**

---

        APPEAL from an order of the circuit court for Kenosha County: CHAD G. KERKMAN, Judge. *Affirmed.*

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Mary A. Hensley and Spriggie N. Hensley, Sr., pro se, appeal from an order granting summary judgment for Froedtert South, Inc. and various Froedtert entities and doctors (collectively, "Froedtert").   The Hensleys assert that the circuit court erred in dismissing their medical malpractice and corporate negligence claims based on their failure to disclose an expert witness and their failure to provide evidence supporting their allegation that Mary's medical records were falsified.   We reject the Hensleys' arguments and affirm.

## BACKGROUND

¶2     On June 22, 2020, the Hensleys sought medical treatment for Mary at Froedtert South – Somers Clinic ("Froedtert South").   According to the complaint, Mary presented symptoms to a physician's assistant, including lower abdominal and back pain, bloating, nausea, diarrhea, vomiting, constipation, and recurring fever.   The physician's assistant ordered x-rays that confirmed the distended appearance of Mary's abdomen, but she did not order other diagnostic testing.   The assistant and her supervising doctor treated Mary's condition as a mild digestive disorder and sent her home with instructions to "adhere to a 'clear liquid' diet."   The Hensleys returned the next day because Mary's pain had not subsided.   Mary was then seen by an advance practice nurse practitioner who was supervised by the same doctor and who also diagnosed Mary with mild digestive disorder and instructed her to adhere to a bland diet.

¶3      On June 25, 2020, the Hensleys returned to Froedtert South for an appointment with a primary care physician.  Mary's condition had continued to deteriorate and she was in "severe distress."  The physician refused to provide treatment because the Hensleys arrived six minutes late.  Spriggie then took Mary to the Kenosha Hospital Emergency Department, where an emergency room physician observed acute pain, fever, disorientation, and physical distress and ordered various diagnostic tests, which showed abnormal values.  The ER physician ordered an ultrasound of Mary's abdomen and a CT scan, which together showed that Mary was suffering from a "prominent inflammatory reaction" likely due to appendicitis.  The following day, Mary was transported by "Flight for Life" to Pleasant Prairie Hospital where Dr. Mejal Jandali performed an appendectomy on Mary.

¶4      The Hensleys filed suit on September 7, 2021.  They asserted claims for medical malpractice and corporate negligence based on allegations that Mary suffered an injury as a result of Froedtert's failure to "correctly diagnose" appendicitis and to timely provide treatment.  Their Amended Complaint added a claim based on allegations that Froedtert "falsified and concealed" Mary's health care records related to her June 2020 visits.  After several months of discovery, the parties filed cross-motions for summary judgment.  Following a hearing, the circuit court ruled in favor of Froedtert and dismissed all three claims.

¶5      The circuit court dismissed the Hensleys' medical malpractice claim because they had failed to disclose any expert witnesses, remarking that "case law does require that ... an expert testify as to what the standard of care is."  The court rejected the Hensleys' argument that their medical malpractice allegations fell within the knowledge and understanding of a layperson and did not require expert testimony.  The court also rejected the Hensleys' contention that they could call

Jandali or any of the other treating physicians to provide expert testimony to support the Hensleys' claims, stating that "you cannot ask them their opinions [as an expert] unless they consent to that and agree to that in a contract." The court concluded the same failure to disclose an expert witness doomed the Hensleys' claim of corporate negligence, because that claim "comes out of … medical negligence." The court rejected the Hensleys' argument that expert testimony was unnecessary because Froedtert's employees did not comply with its own policies and procedures.

¶6 Finally, the circuit court confirmed with the Hensleys that their false records claim was based solely on differences between two versions of a summary they had received on June 23, 2020. The court determined that the Hensleys had not presented evidence supporting their claim that Froedtert falsified Mary's after-visit summary from her June 23, 2020 visit to Froedtert South. The court also concluded the Hensleys had failed to allege damages associated with this claim. The Hensleys appeal, arguing that the circuit court erred in dismissing their claims.

## DISCUSSION

¶7 Appellate courts review a grant or denial of summary judgment de novo using the same methodology as the circuit court. *M&I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175 (Ct. App. 1995); WIS. STAT. § 802.08(2) (2021-22).[1] This court must first examine the complaint to determine whether it states a claim; we then must examine the

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

answer to determine whether it presents a material issue of law or fact. *See Guenther v. City of Onalaska*, 223 Wis. 2d 206, 210, 588 N.W.2d 375 (Ct. App. 1998). If the pleadings are sufficient, our next step is to determine whether the moving party's affidavits and other proof make out a prima facie case for summary judgment. *See Swatek v. County of Dane*, 192 Wis. 2d 47, 62, 531 N.W.2d 45 (1995). "If the moving party has made a prima facie case for summary judgment," the court then examines "the affidavits and other proof of the opposing party" to decide whether there are disputed material facts. *Id.* The moving party need only explain the basis for its motion for summary judgment and identify the portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that it believes show there is no genuine issue of material fact; "the moving party need not support its motion with affidavits that specifically negate the opponent's claim." *Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 292, 507 N.W.2d 136 (Ct. App. 1993) (citation omitted).

## I. Medical Malpractice

¶8 To succeed on a claim of medical malpractice, a plaintiff must prove a negligent act or omission that is below the standard of care and causes an injury. *See Paul v. Skemp*, 2001 WI 42, ¶17, 242 Wis. 2d 507, 625 N.W.2d 860; *J.W. v. B.B.*, 2005 WI App 125, ¶9, 284 Wis. 2d 493, 700 N.W.2d 277. Generally, expert testimony is necessary concerning matters involving special knowledge, skill, or experience on subjects that are not within the realm of the jurors' ordinary experience and that require special learning, study, or experience. *Cramer v. Theda Clark Mem'l Hosp.*, 45 Wis. 2d 147, 150, 172 N.W.2d 427 (1969). In *Olfe v. Gordon*, 93 Wis. 2d 173, 180, 286 N.W.2d 573 (1980), our supreme court made clear that the medical standard of care is one of these subjects: "[i]n medical

malpractice actions, Wisconsin law generally requires the plaintiff to introduce expert testimony as to the standard of care and the defendant's departure from it." *See also **Burnett v. Alt***, 224 Wis. 2d 72, 83-84, 589 N.W.2d 21 (1999). Without testimony from an expert, a jury lacks a frame of reference to determine whether the defendant failed to exercise the degree of care and skill of a reasonably prudent doctor. *See **id.***

¶9 Our supreme court discussed expert testimony in medical malpractice cases extensively in ***Alt*** and held that an expert witness is required in such cases because "a lay person, medically untrained and uneducated, is in no position to answer [questions about what symptoms are normal in a given patient] with anything other than a speculative guess." 224 Wis. 2d at 84. However, the court noted that WIS. STAT. § 907.06 explicitly recognizes an expert witness's right to refuse to provide expert testimony when appointed by the court. *See **Alt***, 224 Wis. 2d at 86. This express statutory grant implies a privilege for an expert to refuse to testify if called by a litigant; "[i]t makes little if any sense to conclude that a litigant has greater rights than a court with respect to obtaining testimony from experts." ***Id.***

¶10 The Hensleys argue that the standard of care governing their medical malpractice claim falls within the knowledge and understanding of the average layperson, and thus does not require expert testimony. To the extent expert testimony is required, the Hensleys argue, they would have called Jandali (Mary's surgeon) and the named defendant doctors to provide expert testimony at trial in support of their claim.

¶11 We reject each of the Hensleys' contentions, beginning with their assertion that no expert testimony is required in support of their medical

negligence claim. The diagnosis of appendicitis is a question that does not lie within the knowledge and experience of a layperson and appendicitis symptoms are not a matter of common knowledge or experience such that a layperson would have been able to recognize the malady upon presentation. Consistent with *Alt*, we conclude that a diagnosis of appendicitis involves specialized knowledge and any testimony regarding the standard of care applicable to that diagnosis must come from an expert witness with sufficient knowledge and training. *See Alt*, 224 Wis. 2d at 83.

¶12 Moreover, an expert witness must have qualified knowledge about the topic on which he or she will be testifying. The Hensleys have failed to demonstrate that Jandali, a surgeon, is a qualified expert, under WIS. STAT. § 907.02, to testify on the standard of care for a physician assistant, emergency room doctor, or a nurse practitioner—the occupations of Mary's medical providers on the dates the alleged negligence occurred. Testimony establishing the applicable standard of care must come from an expert with a similar training and knowledge of the defendant providers. *See Carney-Hayes v. Northwest Wis. Home Care, Inc.*, 2005 WI 118, ¶45, 284 Wis. 2d 56, 699 N.W.2d 524.

¶13 On that point, the Hensleys cannot compel any of the named defendants to offer opinions on the standard of care. *See Alt*, 224 Wis. 2d at 90. Absent exceptional circumstances, a medical witness who is unwilling to testify as an expert—and the fact witnesses here apparently are unwilling—is not required to give an opinion on the applicable standard of care. *See id.* at 89. If the Hensleys were to call the named defendants, their testimony would be limited to describing their own conduct in treating Mary. For these reasons, the circuit court properly dismissed the Hensleys' medical malpractice claim.

7

## II.     Corporate Negligence

¶14     The Hensleys also argue the circuit court erred by dismissing their corporate negligence claim.  The Hensleys assert that Froedtert "not only held itself out as a licensed health care facility[,] but gave its specific assurance [through its webpage] that any patient presenting to its Immediate Care Services with severe illness or injury would be directed to the 'Emergency Department.'"  According to the Hensleys, this statement on Froedtert's webpage "is essentially a 'corporate referral policy' which imposes a duty upon [Froedtert] to implement measures sufficient to ensure [the policy] is carried out by [Froedtert's] employees."  They further argue Froedtert failed to comply with those policies and procedures.

¶15     The Hensleys fail to appreciate that the standard of care against which alleged negligence must be measured cannot be fixed by a defendant's adoption of private rules.  *See Marolla v. American Fam. Mut. Ins. Co.*, 38 Wis. 2d. 539, 543-44, 157 N.W.2d 674 (1968).  "Such rules may require more, or they may require less, than the law requires; and whether a certain course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party."  *Id.* (citation omitted).  In other words, the standard of care is determined by what a reasonable hospital would do in the same or similar circumstances, not by the hospital's policies.  *See Johnson v. Misericordia Cmty. Hosp.*, 99 Wis. 2d 708, 739-40, 301 N.W.2d 156 (1981).

¶16     The question of what a reasonable hospital would do under similar circumstances again implicates the need for expert testimony.  *Id.*  The reasonableness of Froedtert's protocols and/or conduct in determining whether

Mary needed to be referred to the Emergency Department does not fall within the knowledge of a layperson. Consistent with the foregoing discussion, the Hensleys were required to name a witness to establish the standard of care applicable to a reasonable hospital.

¶17 Further, as pointed out in *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 261-62, 580 N.W.2d 233 (1998), a claim of corporate negligence must be supported by evidence establishing a causal nexus between the corporate conduct and the underlying act of an employee or agent that caused injury. Here, the Hensleys needed an expert witness to support their underlying negligence claims against the hospital or its providers and to show a nexus between Mary's injuries and Froedtert's policy. But, as with their medical malpractice claim, the Hensleys failed to show that they were prepared to call an expert witness in order to prove this causation. For these reasons, the circuit court properly dismissed the Hensleys' corporate negligence claim.

### III. "Falsification" and "Concealment" of "Patient Health Care Records"

¶18 Finally, the Hensleys argue that the circuit court erred in dismissing their claim for "falsification" of Mary's health care records. Specifically, they contend that Mary's after-visit summary document ("AVS") was altered to omit critical information concerning the severity of Mary's true condition. The Hensleys' sole basis for this allegation is that the AVS they received following the June 23, 2020 visit did not include the following language that appeared in the final version generated a few minutes later on the same day:

> Regarding your abdominal discomfort, though an extensive workup does not seem warranted at this time, remember that the Immediate Care clinic is limited and serious causes have not been ruled out for you today. Therefore if your pain worsens in any way or you develop other symptoms

including but not limited to fever, vomiting, chest pain, low back pain, or blood in the stool, you are to go to the ER for further evaluation immediately.

¶19   The Hensleys assert that this "falsification" violates WIS. STAT. § 146.83(4), which states that "[n]o person" may:

> **(a)** Intentionally falsify a patient health care record.
>
> **(b)** Conceal or withhold a patient health care record with intent to prevent or obstruct an investigation or prosecution or with intent to prevent its release to the patient, to his or her guardian, to his or her health care provider with a statement of informed consent, or under the conditions specified in s. 146.82(2), or to a person with a statement of informed consent.
>
> **(c)** Intentionally destroy or damage records in order to prevent or obstruct an investigation or prosecution.

¶20   Froedtert asserts that the AVS is automatically generated by Froedtert's electronic medical records system and that it is excluded from the statutory definition of "patient health care records." Setting aside the latter question, we note that the record clearly shows that on June 23, 2020, the AVS was generated as part of an "in process" document with the preliminary version generated automatically at 3:43 p.m., and the final version generated at 3:46 p.m.

¶21   The Hensleys have failed to provide evidence of any intentional "falsification" under the statute. Additionally, both AVS documents were entered into the circuit court record by the Hensleys, and they have provided no evidence of Froedtert "withholding" or "concealing" either document. For at least these reasons, the circuit court properly dismissed the Hensleys' claim based on "falsification" of patient heath care records.

¶22 For the foregoing reasons, we affirm the circuit court's order granting summary judgment.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.